AMX ENTERPRISES, INC. n/k/a AMX Enterprises, LLC, Appellant,

v.

BANK ONE, N.A., Appellee.

No. 01–04–01035–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 13, 2006.

Rehearing Overruled June 15, 2006.

David P. Kallus, The Woodlands, TX, for Appellant.

S. David Smith, Michael D. Conner, Hirsch & Westheimer, P.C., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

In this Uniform Commercial Code (UCC) conversion appeal, appellant, AMX Enterprises, Inc. n/k/a AMX Enterprises, LLC (AMX), challenges a summary judgment rendered in favor of appellee, Bank One, N.A. In six issues on appeal, AMX argues that the trial court erred in granting summary judgment on (1) Raymond and Tobey Willies' claim for tortious interference with contract; (2) AMX's claim for money had and received; (3) AMX's claim for tortious interference with contract; (4) AMX's claim for common law conversion; (5) AMX's claim for negligence; and (6) AMX's section 3.420(a) claim for statutory

conversion, including interest, attorney's fees, and court costs.

We affirm.

## Background

The facts are not disputed. Raymond and Tobey Willie, on their own and on behalf of their mortgage company, CIT Group, contracted with AMX for mold remediation services on their home. Under two contracts entered into between the Willies and AMX, the Willies were to pay AMX $60,978 for its services less three $500 deductions. After AMX fully performed under the contracts, the Willies' insurer, Safeco Lloyds Insurance Company, issued three insurance checks on September 30, 2002 that were each payable to "Raymond Willie & Tobey Willie & Citi Group & AMX Enterprise." In October 2002, all three checks were indorsed by the Willies and forwarded to CIT Group with instructions to indorse the checks and forward them to AMX. On October 29, 2002, instead of indorsing and sending the checks to AMX, CIT Group presented the checks for deposit at Bank One. Bank One accepted the checks even though AMX had never indorsed them. Bank One then presented the checks to the drawee bank, the Northern Trust Company, which forwarded the funds to Bank One. Bank One then deposited the funds into CIT Group's interest-bearing account.

On December 7, 2002, Safeco issued four additional settlement checks totaling $71,149.38 to rebuild the Willies' house. The Willies forwarded these checks to CIT Group on February 15, 2003. On February 26, 2003, CIT Group deposited the four checks into its Bank One account, and it issued three checks to "Raymond Willie III Breckenridge Luxury Homes"[1] the following day.

AMX made a written claim for $59,478 against Bank One on May 29, 2003. When these attempts to recover the funds from Bank One proved unsuccessful, AMX filed suit on June 13, 2003 against Bank One, CIT Group, and the Willies. While the lawsuit was pending, the Willies paid off their mortgage. On January 15, 2004, CIT Group mailed a check in the amount of $59,478 to the Willies. After AMX settled its claims with the Willies for $60,978 and non-suited them, the Willies assigned their claims against CIT Group and Bank One to AMX. Shortly thereafter, on May 21, 2004, Bank One filed its motion for summary judgment, contending that AMX had been paid in full and that other causes of action were preempted by the UCC. On June 25, 2004, the trial court granted Bank One's motion for summary judgment, without stating its reasons, and held that AMX take nothing. The trial court also denied AMX's motion for new trial. On August 27, 2004, the trial court signed AMX's order of non-suit against CIT Group, thus making the judgment final.

## Standard of Review

The standard of review in an appeal from a traditional summary judgment requires a defendant moving for summary judgment on the plaintiff's causes of action to (1) show that there is no genuine issue of material fact as to at least one element of each of the plaintiff's causes of action or (2) establish each element of the defendant's affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). In reviewing a traditional or a no-evidence summary judgment, we assume all the evidence favorable to the nonmovant is true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*

---

1. The Willies contracted with Breckenridge Luxury Homes to rebuild their house.

*Co.*, 51 S.W.3d 573, 577 (Tex.2001). When, as here, the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is rendered, we will affirm the summary judgment if any of the grounds stated in the motion is meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

### Discussion

Bank One sought summary judgment on the following two grounds: (1) CIT Group had paid AMX the full amount of the converted checks, thus triggering the one satisfaction rule and (2) section 3.420 of the UCC preempts AMX's causes of action asserted against Bank One. AMX responded that

> CIT Group has never paid [AMX] any monies, much less the insurance proceeds that it converted. The insurance proceeds that it converted were paid out long ago to Breckenridge Luxury Homes. The check that [CIT Group] wrote on January 15, 2004 was made payable to, and sent to, Raymond Willie (only after he paid off his loan) and in such a manner that he could enforce and negotiate the check without [AMX's] endorsement. [AMX] settled with the Willies after the Willies received the check. The Willies paid the settlement in part with the proceeds of the January 15, 2004 draft from [CIT Group]. This does not constitute "payment" to [AMX] by [CIT Group]. Rather, it constitutes funds paid by the Willies in settlement of [AMX's] breach of contract claim against them.

### One Satisfaction Rule

■■■ The one satisfaction rule prohibits a plaintiff from recovering twice for a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000); *Buccaneer Homes of Alabama, Inc. v. Pelis*, 43 S.W.3d 586, 589 (Tex.App.-Houston [1st Dist.] 2001, no pet.). This rule applies when multiple defendants commit the same act or when multiple defendants commit technically different acts that result in a single injury. *Casteel*, 22 S.W.3d at 390. Moreover, the absence of tort liability does not preclude the application of the one satisfaction rule. *See El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex.1993) (holding that one satisfaction rule does not allow plaintiff to recover from derivatively liable principal or alter ego when plaintiff has already received full settlement on his claim). Whether the rule applies is determined not by the cause of action asserted but by the injury sustained. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex.1991).

■■ Although it pled causes of action against Bank One for statutory and common law conversion, negligence and gross negligence, tortious interference with contract, and money had and received, AMX's suit was predicated on one event as it related to Bank One, namely, Bank One's acceptance of checks when the checks were missing AMX's indorsements; Bank One, which does not dispute its act of depositing CIT Group's funds in CIT Group's account, thus caused but a single injury to AMX—the temporary loss of $59,478.[2]

On January 15, 2004, the Willies received $59,478 from CIT Group. In turn, the Willies paid this sum to AMX in settle-

---

**2.** Section 3.420 "covers cases in which an instrument is payable to two persons and the two persons are not alternative payees, *e.g.,* a check payable to John and Jane Doe. Under section 3–110(d) the check can be negotiated or enforced only by both persons acting jointly." TEX. BUS. & COM.CODE ANN. § 3.420 cmt. 1 (Vernon 2002).

ment of AMX's breach of contract claims against them. By accepting this settlement, AMX was compensated for its injury for the temporary loss of $59,478 and, therefore, precluded from obtaining a second recovery from Bank One. *See Utts v. Short,* 81 S.W.3d 822, 831 (Tex.2002); *Sterling,* 822 S.W.2d at 8; *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.,* 176 S.W.3d 307, 326–27 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). To allow AMX to recover twice for a single injury would violate the purpose of the one satisfaction rule. *See Utts,* 81 S.W.3d at 831; *Sterling,* 822 S.W.2d at 8; *Oyster Creek Fin.,* 176 S.W.3d at 326–27.

### Preemption by UCC Section 3.420

■ AMX argues in its appellate brief that it "has never been compensated for its loss-of-use of its $59,478. Therefore, this injury has never been satisfied." It contends that the monies it received from the Willies were in settlement of AMX's breach of contract claim against them, not in satisfaction of its claims against Bank One. We disagree.

■ Section 3.420 of the UCC specifically provides the measure of damages that can be recovered in a statutory conversion claim. *See* Tex. Bus. & Com.Code Ann. § 3.420 (Vernon 2002). Section 3.420 states that "the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." *Id.* § 3.420(b). Section 3.420 of the UCC preempts common law causes of action that supplant the provisions of the UCC in a suit to recover losses involving negotiable instruments. *See id.* § 1.103 cmt. 2 (Vernon Supp.2005). Section 3.420 provides, in pertinent part,

The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

*Id.* § 3.420(a). "UCC Revised Article 3, as adopted in Texas, represents a comprehensive legislative fault scheme singularly applicable to claims involving negotiable instruments." *See Southwest Bank v. Information Support Concepts, Inc.,* 149 S.W.3d 104, 111 (Tex.2004). The UCC "was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it[s] provisions in many important ways." Tex. Bus. & Com. Code Ann. § 1.103 cmt. 2. Thus, "while principles of common law and equity may *supplement* provisions of the [UCC], they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the [UCC] provides otherwise.... [T]he [UCC] preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies." *Id.* Accordingly, any common law theory of recovery that allows a plaintiff to exceed the maximum amount of liability as stated in section 3.420 is preempted. *See id.* 1.103(a), (b), and cmt. 2.

By its plain reading, AMX's interest in the instrument is $59,478. *See Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex. 1984) (holding that, under former section 3.419(b), bank which pays funds in breach of contract on missing indorsement is liable for face amount of instrument).[3] AMX

---

3. Former section 3.419(b) provided, "In an action against a drawee under Subsection (a)

recovered more than that amount from the Willies. Under UCC section 3.420(b), AMX is precluded from recovering the same loss under different theories against different parties.

We agree that AMX's breach of contract claim against the Willies is technically a different cause of action than the conversion claim asserted against Bank One. Nonetheless, both causes of action are based on AMX's right to recover for the temporary loss of $59,478, which resulted in a single injury to AMX. *See Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 310 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Accordingly, we hold that because AMX accepted $59,478 from the Willies, section 3.420 of the UCC and the one satisfaction rule preclude AMX from recovering additional damages from Bank One.

We overrule AMX's second, third, fourth, and fifth issues on appeal.

### Loss–of–Use of Money

■ In its sixth issue on appeal, AMX contends that the trial court erred by not allowing recovery of the face amount of the checks,[4] plus attorney's fees, interest, court costs, and loss-of-use damages pursuant to its statutory conversion claim under section 3.420 of the UCC.[5]

■ AMX provides no authority that section 3.420 allows for the recovery of attorney's fees, interest, court costs, or loss-of-use damages. It is a well-settled rule of statutory construction that we must presume that every word of a statute has been used for a purpose. *Laidlaw Waste Sys., Inc. v. Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Likewise, we must presume that every word excluded from a statute has been excluded for a purpose. *Id.* Under the facts presented here, we conclude that section 3.420 allows AMX to recover no more than $59,478.

We note that other sections in the Code support our interpretation of section 3.420.[6] Section 3.411(b) states that, "If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, ... the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages." TEX. BUS. & COM.CODE ANN. § 3.411(b) (Vernon 2002). Also, section 3.416 states that "A person ... who took the instrument in good faith may recover from the warrantor as damages for breach

---

the measure of the drawee's liability is the face amount of the instrument. In any other action under Subsection (a) the measure of liability is presumed to be the face amount of the instrument." Act of June 14, 1967, 60th Leg., R.S., ch. 785, 1967 Tex. Gen. Laws 2343, 2429 (amended 1995) (current version at TEX. BUS. & COM.CODE ANN. § 3.420 (Vernon 2002)). Although *Ames* construed the statutory predecessor of current section 3.420, the comments to current section 3.420 make clear that the changes to subsection (b) were to correct a situation in which the plaintiff was not entitled to 100% of the converted instrument, not to change the limitation of maximum damages to the face amount of the

instrument. *See* TEX. BUS. & COM.CODE ANN. § 3.420 cmt. 2.

4. Because we concluded above that AMX recovered its damages for the temporary loss of the face amount of the checks, $59,478, we overrule this portion of its sixth issue on appeal.

5. In the motion for new trial hearing, AMX contended that it lost close to $60,000.

6. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001) (stating that, to ascertain legislative intent, court must look to the statute as a whole and not to its isolated provisions).

of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach." TEX. BUS. & COM.CODE ANN. § 3.416(b) (Vernon Supp. 2005). These two sections indicate that the drafters knew how to allow for a plaintiff to recover additional damages beyond the face value of the check. Because section 3.420 does not specifically allow a plaintiff to recover attorney's fees, interest, court costs, or loss-of-use on a check that has been converted, we conclude that the trial court properly ordered that AMX takes nothing.

We overrule AMX's sixth issue on appeal.

### Tortious Interference With Contract

 In its first issue on appeal, AMX argues that the trial court erred when it granted summary judgment on the tortious interference with contract claim which the Willies assigned to it. In its second amended petition, AMX pled the following:

> Bank One interfered with the contracts between the Willies and [AMX] by accepting for deposit and obtaining payment on the three checks in question without [AMX's] endorsement. Bank One also interfered with the contracts between the Willies and [AMX] when it ignored [AMX's] written claim and thereby subjected the Willies to a lawsuit by [AMX] for non-payment on the contracts.

> Bank One prevented the Willies from being able to meet their contractual payment obligations to [AMX] and directly caused the Willies to breach their contracts with [AMX], when it accepted and obtained payment on the checks without [AMX's] endorsement, and when it subsequently ignored [AMX's] written claim.

> The Willies were directly harmed by Bank One's interference because it subjected them to a lawsuit by [AMX] for nonpayment.

 To recover for tortious interference with contract, a plaintiff must prove (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) a proximate cause of the plaintiff's damages by that act; and (4) actual damages or loss. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex.1996).

As AMX's pleadings show, the Willies' assigned cause of action is based on Bank One's conversion pursuant to section 3.420 of the UCC. AMX pled that the Willies' damages are the act of being sued by AMX. Even if AMX could show that Bank One tortiously interfered with the Willies' contract with AMX, the Willies would still be limited to the damages provided for in section 3.420.[7] Because section 3.420 does not allow recovery for the damages AMX seeks, the trial court properly granted summary judgment on the assigned tortious interference with contract claim.

### Conclusion

We affirm the judgment of the trial court.

---

7. *See* TEX. BUS. & COM.CODE ANN. § 1.305 (Vernon Supp.2005) ("[N]either consequential or special damages nor penal damages may be had except as specifically provided in this title or other rule of law.").