Opinion Issued September 27, 2007 









Opinion Issued September 27, 2007 








 

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00678-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SASKIA MADISON, AS NEXT FRIEND OF M.M., A MINOR,
Appellant

 

V.

 

WARREN REID WILLIAMSON AND JANE SMITH, Appellees

 

 



On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2002-55218








 

 



O P I N I O N

 

Appellant Saskia Madison, as next
friend of M.M., a minor, appeals a judgment in favor of appellee Jane Smith and
against Warren Reid Williamson.[1]  Madison contends (1) the
trial court erred in granting Smith’s no-evidence motion for summary judgment
on Madison’s negligence claims and in not allowing an adequate time for
discovery; (2) the trial court abused its discretion in excluding certain
summary judgment evidence; (3) Smith lacked standing to submit a proposed final
judgment to the trial court, and the trial court
erred in including a statement that Smith did not appear at trial in its final
judgment; (5) the trial court erred in assessing court costs in favor of
Smith; (6) the trial court erred in applying the election of remedies rule to
Madison’s award of actual damages; and (7) the trial court erred in applying
the statutory damage caps to Madison’s award of exemplary damages.  We conclude
that the trial court properly granted summary judgment to Smith, allowed
adequate time for discovery, and any abuse of discretion in the exclusion of Madison’s summary judgment evidence was harmless.  We further conclude that Smith had
standing, and the trial court did not err in the form
of its final judgment. Finally, we conclude that the trial court
properly assessed court costs, and properly applied the election of remedies
rule and statutory damage caps.  We therefore affirm the trial court’s
judgment, both on 




the jury’s verdict against Williamson
and the summary judgment in favor of Smith.  

Background

In 1999, Williamson lived with his
wife, Smith, and their three children, a daughter and two sons.  Madison lived with her daughter a few houses down the street.  M.M. was seven years old in
1999.  

          Williamson did not appear
for the jury trial on damages in this case, so the facts as presented with
respect to the claims against him are uncontested.  During the summer of 1999,
M.M. had planned to spend the night at Williamson’s and Smith’s house on two
separate occasions.  On both occasions, Williamson bathed M.M. and his daughter
together.  M.M. testified that during the baths, Williamson touched her
“privates.”  M.M. could not recall if Williamson used a washcloth or his bare
hands.  M.M. did not spend the night at Williamson’s and Smith’s house on
either occasion because she got scared before she went to sleep.  M.M. told
Madison about the baths when she arrived at home on both occasions but Madison
did not take any action.  

          During a weekend in October
1999, M.M. was playing with Williamson’s children at Williamson’s and Smith’s
house.  M.M. was playing video games when Williamson asked to have a “private
talk” with her.  M.M. accompanied Williamson into his room and he locked the
door.  Williamson told M.M. that he wanted to show her something.  Williamson
then undressed M.M. and performed oral sex on her.  M.M. told Williamson to
stop and she screamed for Smith to help her.  Smith, however, was downstairs
cooking dinner and she did not hear M.M.’s cries for help.  Williamson
instructed M.M. not to tell anyone about what had happened.  M.M. went home
immediately, and she did not see Smith as she was leaving the house.  M.M. told
 Madison about the incident as soon as she arrived at home.  Madison called the police and M.M. never again visited Williamson’s and Smith’s house.  

          The State charged
Williamson with indecency with a child and aggravated sexual assault in
December 1999.  Williamson separated from Smith and moved out of their home in
June 2000.  In January 2001, Williamson pleaded no contest to the Class A
misdemeanor offense of assault, pursuant to a plea bargain with the State.  See
Tex. Pen. Code Ann. § 22.01 (Vernon Supp. 2006).  The trial court deferred adjudication of the offense and placed
Williamson on community supervision for two years.  In February 2001, the trial
court modified the terms of Williamson’s community supervision and added a
provision prohibiting Williamson from traveling on the street where M.M.’s
house was located.  Williamson, however, was not prohibited from visiting his
children or otherwise being present on Smith’s property (which is located on
the same street as M.M.’s house), but to adhere to the terms of his community
supervision, he had to enter Smith’s residence from a rear entrance.  M.M.
alleges that after the trial court modified Williamson’s community supervision,
he continued to appear on the street in front of her house and often made
intimidating faces in an attempt to frighten her.  Williamson and Smith
divorced in October 2001. 

Madison civilly sued Williamson and Smith, on behalf of M.M., in
2002.  In her petition, Madison asserts that Smith was negligent in allowing
Williamson to sexually assault M.M., and in allowing Williamson to violate the
terms of his community supervision by driving on the street where M.M.’s house
was located.  Smith moved for summary judgment, asserting that Madison had produced no evidence that Smith had a duty to (1) prevent Williamson from
sexually assaulting M.M., and (2) ensure Williamson’s compliance with the terms
of his deferred adjudication.  The trial court granted Smith’s no-evidence
summary judgment.  Madison’s claims against Williamson for assault, false
imprisonment, and negligence proceeded to trial. The jury returned a verdict in
favor of Madison, awarding compensatory and exemplary damages.  After electing
the most favorable recovery, and applying exemplary damages caps, the trial
court entered a final judgment against Williamson of $3 million in actual
damages and $1.75 million in exemplary damages, plus interest and costs.

The Summary Judgment

Madison contends the trial court erred in granting Smith’s
no-evidence motion for summary judgment because she produced sufficient
evidence to raise a genuine issue of material fact with regard to her
negligence claims against Smith.  In addition, Madison contends that the trial court
abused its discretion in excluding certain summary judgment evidence.  Smith
responds that Madison produced no evidence of the element of duty.  

At the outset, we note that “in addition to showing an abuse of
discretion, a party complaining
of error in the exclusion of evidence must also show that the trial
court’s error was reasonably calculated to cause, and probably did cause,
the rendition of an improper
judgment.”  City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); see also Tex. R. App. P.
44.1(a)(1); McCraw v. Maris, 828 S.W.2d 756, 757 (Tex. 1992); Bartosh
v. Gulf Health Care Ctr.-Galveston, 178 S.W.3d 434, 439 (Tex. App.—Houston [14th Dist.] 2005, no pet.); Centurion Planning Corp. v. Seabrook Venture
II, 176 S.W.3d 498, 510 (Tex. App.—Houston [1st Dist.] 2004, no pet.). 
In our review of this summary judgment, we consider all of the evidence Madison presented to determine if she raises a fact issue on her negligence claims.  If the
evidence, including evidence that the trial court excluded, does not raise a
fact issue, then any abuse of discretion in the trial court’s exclusion of
evidence is harmless.  See Tex. R. App. P. 44.1(a)(1); Alvarado,
897 S.W.2d at 753; McCraw, 828 S.W.2d at 757.

A.  Standard of Review

In a Rule 166a(i)
no-evidence summary judgment motion, the movant represents that no evidence
exists as to one or more essential elements of the non-movant’s claims, on
which the non-movant would have the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  The non-movant then must
present evidence raising a genuine issue of material fact on the challenged
elements.  Id.  A no-evidence summary judgment is essentially a
pre-trial directed verdict.  Bendigo v. City of Houston, 178
S.W.3d 112, 113–14 (Tex.
App.—Houston [1st Dist.] 2005, no pet.); Jackson v.
Fiesta Mart, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).  On
review, we ascertain whether the non-movant produced more than a scintilla of
probative evidence to raise a genuine issue of material fact.  Jackson, 979 S.W.2d at 70–71.  More than a scintilla of evidence exists if the
evidence “‘rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions.’”  King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997)).  If the evidence does no more than create a
mere surmise or suspicion of fact, less than a scintilla of evidence exists.  Havner,
953 S.W.2d at 711.  To defeat a no-evidence motion for summary judgment, the
respondent is not required to marshal her proof; her response need only point
out evidence that raises a fact issue on the challenged elements.  Tex. R. Civ. P. 166a(i) cmt.   

B.  Negligence

A negligence cause of action has three elements:
(1) a legal duty owed by one
person to another, (2) a breach of that duty, and (3) damages proximately
caused by the breach.  D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002).  The threshold inquiry in a negligence case is
duty.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995); Mathis v. RKL Design/Build, 189 S.W.3d 839, 844 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  The existence of duty is
a question of law for the court to decide from the facts surrounding the
occurrence at issue.  Van Horn v. Chambers, 970 S.W.2d
542, 544 (Tex. 1998); Siegler,
899 S.W.2d at 197; Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990).  In determining whether a
duty exists, a court should consider several interrelated factors, including
the risk, foreseeability, and likelihood of injury weighed against the social
utility of the actor’s conduct, the magnitude of the burden of guarding against
the injury, and the consequences of placing the burden on the defendant.  Mission
Petroleum Carriers, Inc. v. Solomon, 106 S.W.3d 705, 710 (Tex. 2003); Bird
v. W.C.W., 868 S.W.2d 767, 769 (Tex. 1994); Phillips, 801 S.W.2d at 525.  Of all these factors, foreseeability of the risk is the
foremost and dominant consideration.  Phillips, 801 S.W.2d at 525. 
Foreseeability requires only that the general danger, not the
exact sequence of events that produced the harm, be foreseeable.  Mellon
Mortgage Co. v. Holder, 5 S.W.3d 654, 655 (Tex. 1999); Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 551 (Tex. 1985).  The Texas Supreme Court has articulated a two-prong test for foreseeability: (1)
that the injury be of such a general character as might reasonably have been
anticipated; and (2) that the injured party should be so situated with relation
to the wrongful act that injury to him or one similarly situated might
reasonably have been foreseen.  Mellon Mortgage, 5 S.W.3d at 655;
Nixon, 690 S.W.2d at 551.  

1.  Negligent Failure to Prevent
Sexual Assault

          Madison first contends that
Smith was negligent in failing to prevent Williamson from sexually assaulting
M.M. because Smith owed M.M. a duty of care as the owner of the property where
the sexual assault occurred.

          “Generally, a
person has no legal duty to protect another from the criminal acts of a third
person.”  Butcher v. Scott, 906
S.W.2d 14, 15 (Tex. 1995); Siegler,
899 S.W.2d at 199.  Property
owners, however, owe a duty to those who may be harmed by the criminal acts of
third parties if the risk of criminal conduct is so great that it is both
unreasonable and foreseeable.  See Mellon Mortgage, 5
S.W.3d at 655;
Timberwalk Apartments, Partners, Inc. v. Cain,
972 S.W.2d 749, 756 (Tex. 1998); Nixon, 690 S.W.2d at 550.
In considering whether a particular criminal act was so foreseeable and
unreasonable as to impose a duty upon a landowner to an invitee such as M.M.,
we first examine the particular criminal conduct that occurred in light of “specific
previous crimes on or near the premises.”  Mellon Mortgage,
5 S.W.3d at 656 (quoting Walker,
924 S.W.2d at 377).  The Texas Supreme Court described this
examination in Timberwalk:

In determining whether the occurrence of
certain criminal conduct on a landowner’s property should have been foreseen,
courts should consider whether any criminal conduct previously occurred on or
near the property, how recently it occurred, how often it occurred, how similar
the conduct was to the conduct on the property, and what publicity was given
the occurrences to indicate that the landowner knew or should have known about
them. 

 

Timberwalk, 972 S.W.2d at 757.  If, after applying the Timberwalk
factors, we determine that the general danger of the criminal act was
foreseeable, we then apply the second prong of the foreseeability analysis and
determine whether it was reasonably foreseeable that
the injured party, or one similarly situated, would be the victim of the
criminal act.  Mellon Mortgage,
5 S.W.3d at 656–57.  “In essence, we consider whether the plaintiff
was within the range of the defendant’s apprehension such that her injury was
foreseeable.”  Id. at 657 (citing Palsgraf v. Long Island R.R. Co.,
248 N.Y. 339, 344, 162 N.E. 99, 100 (1928)); see also Siegler,
899 S.W.2d at 197.

In this case, Madison failed to produce evidence that Smith should have foreseen that Williamson would
engage in inappropriate sexual conduct with M.M. on her property.  The record
contains no evidence that Williamson was ever accused of committing any crime
before M.M. accused him of sexual assault in the fall of 1999.  Additionally,
there is no evidence that Smith knew about any prior inappropriate sexual
conduct on the part of Williamson with regard to M.M., his own children, or
anyone else.  The record also contains no evidence that Smith knew that
Williamson bathed M.M. with his daughter on two occasions during the summer of
1999.  Smith testified that she first learned about the baths from one of her
sons after M.M. had accused Williamson of sexual assault in October 1999. 
Smith’s son also told an employee at the Children’s Assessment Center that Smith did not know about the baths until he told her.  M.M. told Police Officer S.
Valenta that Smith was at home the first time Williamson gave her a bath.  Dr.
Carmen Petzold, one of Madison’s expert witnesses, opined that based on M.M.’s
statements to Officer Valenta, Smith was probably aware that Williamson had
bathed M.M.  Petzold’s speculation, however, does not constitute evidence that
Smith was aware of Williamson’s inappropriate conduct because it is not based
on any personal knowledge.  

Considering all the
evidence in the record (including the evidence excluded by the trial court), we
have found no evidence that Smith reasonably should have foreseen that
Williamson would engage in inappropriate sexual conduct on her property at the
time such acts took place.  See Mellon Mortgage,
5
S.W.3d at 655;
Timberwalk, 972 S.W.2d at 756;
Nixon, 690 S.W.2d at 550.  Madison therefore did not raise a fact issue
on the element of duty for a negligence cause of action.  See Sanders v.
Herold, 217 S.W.3d 11, 17 (Tex. App.—Houston [1st Dist.] 2006, no pet.)
(affirming summary judgment on ground that no evidence existed that parents
should have foreseen that son would molest child, thus precluding imposition of
a legal duty to prevent criminal conduct).  Compare Childers v. A.S., 909
S.W.2d 282, 289 (Tex. App.—Fort Worth 1995, no writ) (holding that defendants
had no duty to prevent sexual misconduct on part of their daughter with
neighbor child because conduct was not foreseeable due to defendant’s lack of
knowledge of conduct) with Isbell v. Ryan, 983 S.W.2d 335, 341
(Tex. App.—Houston [14th Dist.] 1998, no pet.) (imposing duty on defendant to
prevent sexual assault of minor girl at hands of her son when CPS investigator
told defendant that her son was probably responsible for physical and sexual
abuse of another girl) and Doe v. Franklin, 930 S.W.2d 921, 928–29 (Tex.
App.—El Paso 1996, no writ) (imposing duty on defendant to prevent further
sexual assaults of her granddaughter when granddaughter specifically told
defendant that her grandfather had molested her) and Cain v. Cain,
870 S.W.2d 676, 680–81 (Tex. App.—Houston [1st Dist] 1994, writ denied)
(imposing duty on defendant to prevent sexual assault of his niece when he
allowed his son-in-law and niece to live at his house and he knew that his
son-in-law had previously been convicted of sexually assaulting minor).  The
trial court, therefore, properly granted Smith’s motion for summary judgment on
 Madison’s claim that
Smith was negligent in failing to prevent Williamson from assaulting M.M..  See Tex. R. Civ. P. 166a(i).

2.  Negligent Failure to Prevent
Violations of Community Supervision

          Madison also contends that
Smith was negligent in failing to prevent Williamson from driving on the street
where M.M.’s house was located, in violation of the terms of his community
supervision, because a special relationship existed between Smith and
Williamson, giving rise to Smith’s duty to control Williamson’s conduct.  

“Generally, there is no
duty to control the conduct of others.”  Tex. Home Mgmt., Inc. v. Peavy,
89 S.W.3d 30, 34 (Tex. 2002).  This general rule does
not apply when a special relationship exists between the actor and the third
person, which imposes a duty upon the actor to control the third person’s conduct,
or a special relationship exists between the actor and the other person which
gives the other person a right to protection.  See
id.; Van Horn,
970 S.W.2d at 546–47; Golden Spread Council, Inc. v. Akins,
926 S.W.2d 287, 292 (Tex. 1996); Phillips, 801 S.W.2d at 525.  The
relationship must impose a duty upon the actor to control the third person’s
conduct.  Van Horn,
970 S.W.2d at 546–47.  “These [special
relationships] include the relationship between employer and employee, parent
and child, and independent contractor and contractee under special
circumstances.”  Phillips, 801 S.W.2d at 525.  The Texas
Supreme Court also recently found that a special relationship existed between a
medical care facility for the mentally retarded and a patient, giving rise to
the facility’s duty to control the actions of the patient.  See Peavy,
89 S.W.3d at 36.  No Texas court has held that such a relationship exists
between a husband and wife.

The record in this case
contains no evidence that Smith had any duty, right, or ability to control Williamson’s
conduct.  Nothing inherent in this husband-wife relationship gives rise to a
fact issue that either spouse had the right to control the other.  See Doe,
930 S.W.2d at 927 (finding no special relationship between husband and wife
because wife had no right to control husband); Tex. Fam. Code Ann. § 3.201(c) (Vernon 2006) (“A
spouse does not act as an agent for the other spouse solely because of the
marriage relationship.”).  Considering all the evidence in the
record (including the evidence excluded by the trial court), no evidence raises
a fact issue as to a special relationship between Smith and Williamson.  See
Van Horn, 970 S.W.2d at 546–47; Doe, 930 S.W.2d at 927.  Smith therefore did not have a duty
to control Williamson’s conduct, and the trial court
properly granted summary judgment on Madison’s claim that Smith was
negligent in failing to prevent Williamson from driving near M.M.’s house.  See Peavy, 89 S.W.3d at 34. 

C. Adequate Time for Discovery

          Madison contends that the
trial court erred in granting Smith’s no-evidence motion for summary judgment
because adequate time for discovery had not elapsed at the time the trial court
granted the motion.  See Tex. R.
Civ. P. 166a(i).  Madison filed suit in
October 2002, and Smith and Williamson answered in November.  The trial court
set the original discovery deadline for August 22, 2003 and the original trial
date for September 22, 2003.  Smith moved for a no-evidence motion for summary
judgment a week after the August discovery deadline.  The trial court later
reset the trial date for December 2003, and discovery continued.  The trial
court granted Smith’s summary judgment motion on December 5, 2003.

          Texas Rule of Civil
Procedure 166a(i) provides:

After adequate time for discovery, a party
without presenting summary judgment evidence may move for summary judgment on
the ground that there is no evidence of one or more essential elements of a
claim or defense on which an adverse party would have the burden of proof at
trial.  The motion must state the elements as to which there is no evidence. 
The court must grant the motion unless the respondent
produces summary judgment evidence raising a genuine issue of material fact.



Id.  “Whether a nonmovant has had adequate time for
discovery under rule 166a(i) is case specific.”  Rest. Teams Int’l, Inc. v. MG Sec. Corp., 95 S.W.3d
336, 339 (Tex. App.—Dallas 2002, no pet.).  Rule 166a(i) does not require that
discovery must have been completed, only that there was “adequate time.”  Specialty
Retailers, Inc. v. Fuqua, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  To determine
whether adequate time for discovery has elapsed, we examine such factors as:
(1) the nature of the case; (2) the nature of evidence necessary to controvert
the no-evidence motion; (3) the length of time the case was active; (4) the
amount of time the no-evidence motion was on file; (5) whether the movant had
requested stricter deadlines for discovery; (6) the amount of discovery already
completed; and (7) whether the discovery deadlines in place were specific or
vague.  Brewer & Pritchard, P.C. v. Johnson, 167 S.W.3d 460, 467
(Tex. App.—Houston [14th Dist.] 2005, pet. denied); Rest. Teams Int’l, Inc.,
95 S.W.3d at 339; McMahan
v. Greenwood, 108 S.W.3d 467, 498
(Tex. App.—Houston [14th Dist.] 2003, pet. denied); Martinez v. City of San
Antonio, 40 S.W.3d 587, 591 (Tex. App.—San Antonio 2001, pet. denied).  We
review a trial court’s determination of whether an adequate time for discovery has
passed under an abuse of discretion standard.  Fuqua, 29 S.W.3d at 145. 
A
trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner “without reference to any guiding rules or principles.”  Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).

          Madison’s lawsuit had been on file for over one year at the time the trial court granted
summary judgment.  The trial court also extended the discovery period on one
occasion, and allowed Madison to file additional summary judgment evidence late. 
Furthermore, Madison has made no effort to specify the additional evidence she
needed to respond to the motion, or the reason she could not obtain it during
the discovery period.  See Tex.
R. App. P. 166a(i) cmt (“A discovery period set by pretrial order should
be adequate opportunity for discovery unless there is a showing to the
contrary, and ordinarily a motion under paragraph (i) would be permitted after
the period but not before.”).  We also note that Madison filed her own
no-evidence summary judgment motion on August 22, 2003, asserting that adequate
time for discovery had elapsed on Smith’s defamation claim because the trial
court’s discovery deadline had passed.  Under these circumstances, we hold that
the trial court did not abuse its discretion in determining that adequate time
for discovery had elapsed on Madison’s negligence claims and in granting
Smith’s no-evidence motion for summary judgment.  See LaRue v. Chief
Oil & Gas, L.L.C., 167 S.W.3d 866, 873 (Tex. App.—Fort Worth 2005, no
pet.) (holding that trial court did not abuse its discretion in determining
that adequate time for discovery had elapsed); McMahan,
108 S.W.3d at 498–99 (same); Fuqua, 29 S.W.3d at 145
(same).

Standing

          Madison contends that
because the trial court granted Smith’s motion for summary judgment in an
interlocutory order, Smith was not a party to the final judgment and therefore
lacked standing to prepare and submit a proposed final judgment to the trial
court.  After the trial court granted Smith’s motion for summary judgment, Madison’s remaining claims against Williamson proceeded to trial, and the jury returned a
verdict in her favor.  The trial court never severed Madison’s claims against
Smith, thus the trial court’s interlocutory order granting summary judgment was
not final.  See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205 (Tex. 2001)
(“[A]n order or judgment is not final for purposes of appeal unless it actually
disposes of every pending claim and party or unless it clearly and
unequivocally states that it finally disposes of all claims and all parties.”).  Madison moved the trial
court to enter a final judgment.  Smith responded, submitting her own proposed
final judgment for the trial court’s consideration.  The trial court then
entered a final judgment.

Texas Rule of Civil Procedure 305
provides that “[a]ny party may prepare and submit a proposed judgment to the
trial court for signature.”  Tex. R.
Civ. P. 305.  The trial court’s interlocutory order granting Smith’s
motion for summary judgment did not terminate Smith’s status as a party to this
lawsuit.  Madison’s pleadings named Smith as a defendant at all times, and the
trial court never severed Madison’s negligence claims against Smith.  Smith had
an interest in the content of the trial court’s final judgment because the
judgment would make the interlocutory order granting Smith’s motion for summary
judgment a final, appealable order.  See Lehmann, 39 S.W.3d at 205.  The
trial court therefore did not err in considering Smith’s final judgment.

Form of the Judgment

          Madison contends that the
trial court erred in including the following language in its final judgment:
“Defendant Jane Smith did not appear at trial as she had already been granted
an interlocutory summary judgment by order of this Court dated on or about
December 5, 2003.”  Madison asserts that this language is inaccurate because
Smith appeared on the first day of trial and announced that she was present to
observe but would not participate.

          Texas courts apply the common law presumption that whatever is omitted
from the record is relevant to and supports the judgment on appeal.  W & F Transp., Inc. v. Wilhelm, 208 S.W.3d 32,
37 (Tex. App.—Houston [14th Dist.] 2006, no pet.). “To complain on appeal about
a matter that would not otherwise appear in the record, a party must file a
formal bill of exception.”  Tex. R. App.
P. 33.2.            

The reporter’s record in this case
contains no evidence that Smith appeared on the first day of trial.  Additionally,
the appearance sheets at the beginning of each volume of the reporter’s record
do not reflect that Smith or her counsel appeared at trial.  Furthermore, Madison failed to file a formal bill of exception to preserve this issue for appeal.  See
id.  Accordingly, because the record
contains no evidence that Smith appeared at trial, we apply the common law
presumption and assume that Smith did not appear at trial in accordance with
the statements in the trial court’s judgment.  See
Wilhelm, 208 S.W.3d at 37; see also Nicholson v. Fifth Third Bank, 226 S.W.3d 581, 583 (Tex. App—Houston [1st
Dist.] 2007, no pet.) (presuming that evidence supported trial court’s judgment
because appellant failed to present sufficient record on appeal); Willms v. Americas Tire Co., 190 S.W.3d 796, 806
(Tex. App.—Dallas 2006, pet. denied) (same).  We therefore hold that the trial
court did not err in including the disputed language in its final judgment. 


Judgment

          With respect to the final
judgment, Madison contends that the trial court (1) abused its discretion in
adjudicating court costs in favor of Smith, (2) erroneously applied the
election of remedies rule, and (3) erroneously applied statutory damage caps.

A. Court Costs

          The trial court taxed costs
against Williamson for Madison’s case against him and against Madison for her case against Smith.  Madison contends that the trial court abused its
discretion in adjudicating Smith’s court costs against Madison because Smith
failed to provide the trial court and Madison with an accounting of her court
costs before the trial court entered its final judgment.  See Varner v. Howe, 860
S.W.2d 458, 466 (Tex. App.—El Paso 1993, no pet.) (“All that [Texas Civil
Practice and Remedies Code section 31.007(a)] seems to [require] is that the
successful party present to the trial judge and opposing counsel at some time
before the judgment is signed an itemized list of costs and fees incurred
during the lawsuit so that the judge can determine which costs and fees are
properly includable in the judgment.”).  

The Texas Rules of Civil
Procedure provide that “[t]he successful party to a suit shall recover of his
adversary all costs incurred therein, except where otherwise provided.”  Tex. R. Civ. P. 131.  “The
court may, for good cause, to be stated on the record, adjudge the costs
otherwise than as provided by law or these rules.”  Tex. R. Civ. P. 141.  “A ‘successful party’ is
one who obtains a judgment of a competent court vindicating a civil claim of
right.”[2]  Univ. of Houston-Clear Lake v. Marsh, 981 S.W.2d 912, 914 (Tex.
App.—Houston [1st Dist.] 1998, no pet.); accord
Bayer Corp. v. DX Terminals, Ltd., 214 S.W.3d 586, 611–12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); see also Tex. River Barges v. City of San Antonio,
21 S.W.3d 347, 358 (Tex. App.—San Antonio 2000, pet. denied) (awarding costs to
defendant who prevailed on motion for summary judgment).  The allocation of
costs is a matter for the trial court’s discretion and cannot be overturned on
appeal unless the trial court abused its discretion.  Marsh, 981 S.W.2d
at 914.  Here, the trial court taxed
costs against the unsuccessful party and thus acted within its discretion.  Id.

In response to a request
for an award of costs, the court’s
role is to adjudicate which party or parties is to bear the costs
of court, not to determine the 




correctness of specific items.  See Reaugh v. McCollum
Exploration Co.,
140 Tex. 322, 325, 167 S.W.2d 727, 728 (1943); Pitts v. Dallas
County Bail Bond Bd., 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet.
denied). The trial court should state in its
judgment which party is to pay costs.  See Tex. R. Civ. P. 131; Reaugh,
167 S.W.2d at 728; Pitts, 23 S.W.3d at 417. 
The judgment should not state the amount taxed as costs, but only that costs
are awarded against a certain party.  See Pitts, 23 S.W.3d at 417. 
Taxing costs, as distinguished from adjudicating those costs, is merely a
ministerial duty of the clerk.  Wood v. Wood, 159 Tex. 350, 358, 320 S.W.2d 807, 813 (1959); see also Tex. R. Civ. P. 129, 149, 622.  

The rules do not require
a successful party in a lawsuit to submit an accounting of her court costs to
the trial court and opposing counsel before the entry of a judgment
adjudicating costs.  See
Tex. Civ. Prac. & Rem. Code Ann. §
31.007(a); Tex. R. Civ. P. 129,
131, 149, 622.  Rather, Texas Civil Practice and Remedies Code
section 31.007(a) requires the successful party to submit a record of its court
costs to the court clerk so that the clerk can perform its ministerial duty and
tax costs in accord with Texas Rule of Civil Procedure 622.  See Tex. Civ. Prac. & Rem. Code Ann. §
31.007(a); Tex. R. Civ. P. 622. 
The trial court in this case therefore did not abuse its discretion in
adjudicating Smith’s court costs against Madison despite Smith’s failure to
submit an accounting of her costs before the trial court’s adjudication of
costs.[3]  

B. Election of Remedies

Madison next contends that the
trial court erroneously applied the election of remedies rule to limit her
recovery of actual damages from Williamson.  We disagree.
          A party may sue and seek damages on alternative theories of
liability.  Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,
959 S.W.2d 182, 184 (Tex. 1998).  If a plaintiff pleads alternate theories of
liability, a judgment awarding damages on each alternate theory may be upheld
if the theories depend on separate and distinct injuries and if separate and
distinct damages findings are made as to each theory.  See Birchfield
v. Texarkana Mem'l Hosp.,
747 S.W.2d 361, 367 (Tex. 1987).  “Under the one-satisfaction rule, [however,] a plaintiff is entitled to
only one recovery for any damages suffered because of a particular injury.”  Utts
v. Short, 81 S.W.3d 822, 831 (Tex. 2002); accord Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 303 (Tex. 2006); Crown
Life Ins. Co. v. Casteel,
22 S.W.3d 378, 390 (Tex. 2000); Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 




(Tex. 1991); Emerson Elec. v. Am. Permanent
Ware, 201 S.W.3d 301, 314 (Tex. App.—Dallas 2006, no pet.); AMX Enters., Inc. v. Bank
One, N.A.,
196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).
 Although the traditional “one satisfaction” principle applies to cases in
which an injured plaintiff is wholly compensated by settling defendants or
other third parties, as described in Utts, other Texas Supreme Court authorities
use the term to describe the process by which the trial court elects the remedy
which affords an injured plaintiff the most favorable relief against a single
defendant when multiple theories of liability cause an indivisible injury.  Compare
Utts, 81 S.W.3d at 831; Sterling, 822 S.W.2d at 5 with
Birchfield, 747 S.W.2d at 367 and Chapa, 212 S.W.3d at 303.  The
latter rule applies when a defendant commits technically different acts that
result in a single injury.  Casteel, 22 S.W.3d at 390; Emerson,
201 S.W.3d at 314.  “When a party tries a case on alternative
theories of recovery and a jury returns favorable findings on two or more
theories, the party has a right to a judgment on the theory entitling him to
the greatest or most favorable relief.”  Boyce Iron Works, Inc. v. Sw. Bell
Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988); accord Birchfield,
747 S.W.2d at 367 (holding that injured plaintiffs may not recover punitive
damages under the DTPA and for gross negligence in the absence of separate and
distinct actual damages).
          In this case, the jury returned a verdict in favor of Madison on her claims of negligence, false imprisonment, and assault, and awarded actual damages
as follows:

1. Negligence 

Actual Damages – $3,000,000 

 

          2. False Imprisonment

                   Actual Damages – $10,000

 

          3. Assault

                   Actual Damages – $2, 350,000

 

The trial court entered a
judgment against Williamson awarding Madison $3,000,000 in actual damages.  

At trial, Madison did not attempt to distinguish between the damages M.M. suffered as a result of
Williamson’s negligence, false imprisonment, and assault.  Instead, Madison presented evidence of M.M.’s damages generally, focusing on the personal injury
Williamson’s conduct had caused M.M., and the mental anguish that resulted.  Madison submitted identical damage questions after each liability question in the jury charge. 
According to the evidence Madison presented at trial, M.M. suffered past and
future physical pain, past and future mental anguish, past and future physical
impairment, and loss of future earning capacity as a result of all of
Williamson’s inappropriate conduct.  We hold the trial court properly concluded
that each of the claims resulted in a single, indivisible injury.  See, e.g.,
Tony Gullo Motors, 212 S.W.3d at 303 (holding that plaintiff’s
injury was indivisible, requiring an election between damages awarded for
breach of contract, fraud and the DTPA); Household Credit Servs., Inc. v.
Driscol, 989 S.W.2d 72, 81–82 (Tex. App.—El Paso 1998, pet. denied)
(applying one satisfaction rule and limiting plaintiff’s recovery for multiple
torts that caused same injury); Berry Prop. Mgmt., Inc. v. Bliskey, 850
S.W.2d 644, 666 (Tex. App.—Corpus Christi 1993, writ dism’d by agr.) (applying
one satisfaction rule and limiting plaintiff’s recovery for negligence and DTPA
claims that resulted in same injury); but see Beaumont v. Basham, 205
S.W.3d 608, 615 (Tex. App.—Waco 2006, pet. denied) (holding that election of
remedies rule should not be applied to plaintiff’s damage recoveries for
invasion of privacy and theft because injuries were separate and distinct); Baribeau
v. Gustafson, 107 S.W.3d 52, 61 (Tex. App.—San Antonio 2003, pet. denied)
(holding that election of remedies rule should not be applied to plaintiff’s
damage recoveries for battery and fraud because injuries were separate and
distinct).  We hold that the trial court properly applied the election of
remedies rule and limited Madison’s recovery to the actual damages awarded for
her negligence claim because the negligence award afforded the greatest
recovery.  See Chapa, 212 S.W.3d at 304; Casteel,
22 S.W.3d at 390 (Tex. 2000); Boyce Iron Works, Inc., 747
S.W.2d at 787; Birchfield, 747 S.W.2d at 367; AMX Enters., Inc.,
196 S.W.3d at 206. 

C. Exemplary Damages

          Madison finally contends
that the trial court erred in applying statutory damages caps to the award of
exemplary damages against Williamson.  The jury awarded exemplary damages in
the following amounts:

1. Negligence

Exemplary Damages – $2,500,000 

 

          2. False Imprisonment

                   Exemplary Damages – $50,000

 

          3. Assault

                   Exemplary Damages – $1,000,000

 

The trial court applied the statutory
exemplary damages caps and entered a judgment awarding Madison $1,750,000 in
exemplary damages.  See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.008(b) (Vernon Supp. 2006).  

          Texas Civil Practice and
Remedies Code section 41.008 provides:

(a) In an
action in which a claimant seeks recovery of damages, the trier of fact shall
determine the amount of economic damages separately from the amount of other
compensatory damages.

(b) Exemplary damages awarded against a
defendant may not exceed an amount equal to the greater of:

(1)(A)
two times the amount of economic damages; plus (B)
an amount equal to any noneconomic damages found by the jury, not to exceed
$750,000; or

(2) $200,000.


(c) This section does not apply to a
cause of action against a defendant from whom a plaintiff seeks recovery of
exemplary damages based on conduct described as a felony in the following
sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct
was committed knowingly or intentionally:

(1)
Section 19.02 (murder);

(2)
Section 19.03 (capital murder);

(3)
Section 20.04 (aggravated kidnapping);

(4)
Section 22.02 (aggravated assault);

(5)
Section 22.011 (sexual assault);

(6)
Section 22.021 (aggravated sexual assault);

(7)
Section 22.04 (injury to a child, elderly individual, or disabled individual,
but not if the conduct occurred while providing health care as defined by
Section 74.001);

(8) Section
32.21 (forgery);

(9) Section 32.43 (commercial bribery);

(10)
Section 32.45 (misapplication of fiduciary property or property of financial
institution);

(11)
Section 32.46 (securing execution of document by deception);

(12)
Section 32.47 (fraudulent destruction, removal, or concealment of writing);

(13)
Chapter 31 (theft) the punishment level for which is a felony of the third
degree or higher;

(14)
Section 49.07 (intoxication assault); or

(15)
Section 49.08 (intoxication manslaughter).


(d) In this section, “intentionally” and
“knowingly” have the same meanings assigned those terms in Sections 6.03(a) and
(b), Penal Code.


(e) The provisions of this section may
not be made known to a jury by any means, including voir dire, introduction
into evidence, argument, or instruction.


(f) This
section does not apply to a cause of action for damages arising from the
manufacture of methamphetamine as described by Chapter 99.

 

Id.
§ 41.008. 
Before a court will apply the exception to the statutory damage caps in section
41.008(c), a plaintiff must obtain jury findings that the defendant violated
one of the criminal code provisions listed in the statute, and that the
violation was committed knowingly or intentionally.  See Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc., 138 S.W.3d 915, 927 (Tex.
App.—Dallas 2004, pet. stricken) (holding that exemption from statutory
exemplary damage caps requires plaintiff to obtain jury findings on elements of
listed criminal offenses and knowing or intentional mental state); see also
Murphy v. Am. Rice, Inc., No. 01-03-01357-CV, 2007 WL 766016, at *21
(Tex. App.—Houston [1st Dist.] Mar. 9, 2007, no pet.) (mem. op.) (noting that
trial court did not apply statutory damage caps on exemplary damages because
jury expressly found that defendant had engaged in criminal conduct listed in
statute); HCRA of Tex., Inc. v. Johnston, 178 S.W.3d 861, 874 n.13 (Tex.
App.—Fort Worth 2005, no pet.) (noting that jury’s malice finding alone does
not trigger exception to statutory damage caps because definition of malice is
different than definition of intentional or knowing conduct under Texas Penal
Code); Mission Res., Inc. v. Garza Energy Trust, 166 S.W.3d 301, 315
(Tex. App.—Corpus Christi 2005, pet. granted) (holding that exemption from
statutory exemplary damage caps requires plaintiff to prove defendant’s
criminal conduct beyond a reasonable doubt); Greenberg Traurig of N.Y., P.C.
v. Moody, 161 S.W.3d 56, 68 (Tex. App.—Houston [14th Dist.] 2004, no pet.)
(noting that trial court did not apply statutory damage caps on exemplary
damages because jury expressly found that defendant had engaged in criminal
conduct). The finding of fraud, malice, or gross negligence necessary to obtain
exemplary damages is not sufficient to evoke the exception to the statutory
damage caps because the application of the exception under these circumstances would
be inconsistent with the statutory scheme of limiting exemplary damages even
when fraud, malice, or gross negligence has been proven by clear and convincing
evidence.  See Tex. Civ. Prac.
& Rem. Code Ann. §§ 41.003, 41.008 (Vernon Supp. 2006); Signal Peak Enters. of Tex., Inc., 138 S.W.3d at 927.

          Here, Madison did not obtain a jury finding that Williamson violated any of the criminal code
provisions listed in section 41.008(c).  See Tex.
Civ. Prac. & Rem. Code Ann. § 41.008(c); Signal Peak Enters. of Tex., Inc., 138 S.W.3d at 927.  Although the
jury found that Williamson acted with malice, thus entitling Madison to punitive damages, such a finding alone is insufficient under the Civil Practice and
Remedies Code to remove the caps on exemplary damages because it lacks the
required statutory finding of a knowing or intentional violation of the
criminal law.  See Signal Peak Enters. of Tex., Inc., 138
S.W.3d at 927; Johnston, 178 S.W.3d at 874 n.13; see also Tex. Pen. Code Ann. § 6.03(a)–(b)
(Vernon 2003) (defining knowing and intentional conduct).  Without a jury
finding that Williamson knowingly or intentionally violated one of the criminal
provisions listed in section 41.008(c), we hold that the trial court properly
applied the statutory damage caps to Madison’s award of exemplary damages.  See
id. § 41.008(a)–(c); Murphy, 2007 WL 766016, at *21; Johnston,
178 S.W.3d at 874 n.13; Mission Res., Inc., 166 S.W.3d at 315; Moody,
161 S.W.3d at 68; Signal Peak Enters. of Tex., Inc., 138 S.W.3d at 927.  

The actual damages for
the negligence claim were broken down as follows:

1. Negligence

Past and future physical pain, mental
anguish, and physical impairment –$2,000,000

Future loss of earning capacity – $500,000

 

In calculating Madison’s exemplary
damages under the damage caps, the trial court multiplied Madison’s economic damages[4] by two ($500,000 x 2 =
$1,000,000), and then added $750,000 in noneconomic damages[5]
for a total of $1,750,000 in exemplary damages.[6]  We hold that the trial
court properly calculated Madison’s exemplary damages in accordance with
section 41.008(b)(1).  See Tex.
Civ. Prac. & Rem. Code Ann. § 41.008(b)(1).

Conclusion

We hold that the trial court properly
granted summary judgment to Smith, allowed adequate time for discovery, and
that any abuse of discretion in the exclusion of Madison’s summary judgment
evidence was harmless.  We further hold that Smith had standing to submit a
proposed final judgment, and the trial court did not
err in the form of its final judgment. Finally, we hold that the trial
court properly assessed court costs, and properly applied the election of
remedies rule and the statutory damage caps in determining the judgment for
actual and exemplary damages.  We therefore affirm the judgment of the trial
court.

 

 

 

 

 

 

 

 

 

Jane Bland

                                                                             Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

 









[1] Saskia Madison, M.M., and Jane Smith are aliases, used in the pleadings
and briefing pursuant to a trial court order.





[2] Saskia does not contest Smith’s status as the
“successful party” in this lawsuit.  See Tex. R. Civ. P. 131; Univ. of Houston-Clear Lake v. Marsh, 981 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1998, no pet.).





[3] To the extent Madison complains about the taxation of
any specific costs, her remedy is a motion to re-tax costs in the trial court. 
See Operation Rescue-Nat’l v. Planned Parenthood of Houston & Se.
Tex., Inc., 937 S.W.2d 60, 87 (Tex.
App.—Houston [14th Dist.] 1996) (“A motion to retax costs is one
to correct the ministerial act of the clerk of the court in tabulating costs.”), aff’d
as modified, 975 S.W.2d 546, 570 (Tex. 1998).





[4] “‘Economic damages’ means
compensatory damages intended to compensate a claimant for actual economic or
pecuniary loss; the term does not include exemplary damages or noneconomic
damages.”  Tex. Civ. Prac. & Rem.
Code Ann. § 41.001(4) (Vernon Supp. 2006).





[5] “‘Noneconomic damages’
means damages awarded for the purpose of compensating a claimant for physical
pain and suffering, mental or emotional pain or anguish, loss of consortium,
disfigurement, physical impairment, loss of companionship and society,
inconvenience, loss of enjoyment of life, injury to reputation, and all other
nonpecuniary losses of any kind other than exemplary damages.”  Id. § 41.001(12).

 





[6] “‘Exemplary damages’ means
any damages awarded as a penalty or by way of punishment but not for
compensatory purposes.  Exemplary damages are neither economic nor noneconomic
damages.  ‘Exemplary damages’ includes punitive damages.”  Id. §
41.001(5).