**PEERLESS INSURANCE COMPANY,**
and North American Systems, Inc.,
Plaintiffs-Appellants,

v.

**TEXAS COMMERCE BANK—NEW BRAUNFELS, N.A.,**
Defendant-Appellee.

No. 85–2311.

United States Court of Appeals,
Fifth Circuit.

June 13, 1986.

Daniel W. Hammer, Thompson, Hine & Flory, David J. Hooker, Cleveland, Ohio, McGown & McClanahan, Michael W. Fox, San Antonio, Tex., for plaintiffs-appellants.

Timothy Patton, John R. Locke, Jr., R. Wes Johnson, San Antonio, Tex., for defendant-appellee.

Before GOLDBERG, WILLIAMS and DAVIS, Circuit Judges.

IRVING L. GOLDBERG, Circuit Judge:

This diversity case involves the question whether § 3–419 of the Uniform Commercial Code displaced the common law action for money had and received under Texas law. It arises, one could say, from Vincent J. Menier's desire for more cream in his coffee. While Joe Dimaggio confidently extolled the virtues of "Mr. Coffee" coffee makers, which are manufactured by appellant North American Systems, Inc., Menier, the Vice President of North American's Fairfield Filter Division, pilfered and filched checks through the financial filter of forged endorsements. Menier personally endorsed and deposited checks payable to the Fairfield Filter Division in his personal bank accounts at the First National Bank of New Braunfels, Texas, whose successor-in-interest is appellee Texas Commerce Bank.

Appellant Peerless Insurance Company had insured North American against losses of up to $500,000 caused by fraudulent or dishonest acts by North American's employees. On March 1, 1983, North American submitted to Peerless a proof of loss that showed, according to its investigation, that Menier had misappropriated at least $1,275,880.12 of North American's funds from December 27, 1978, through December 8, 1982. Peerless paid North American under a reservation of rights and has become subrogated to all of North American's rights against Texas Commerce. Peerless and North American then sued Texas Commerce to recover the lost funds.

As grounds for their complaint, Peerless and North American asserted three causes of action against Texas Commerce—conversion, negligence, and money had and received. Having let the first two percolate past the applicable statutes of limitations, appellants lost those claims on Texas Commerce's motion for summary judgment. The district court dismissed the remaining claim for money had and received for failure to state a claim. In its view, the Uniform Commercial Code "has changed the theory of recovery from one of constructive trust to a loss allocation scheme and thus a conflict between the code and a common law claim for money had and received now exists. Accordingly, such a common law action is no longer recognized in Texas and cannot be litigated here." Rec. at 58. Finding that the district court's construction of Texas law cannot withstand even that "special deference" afforded a district court sitting in diversity when no state court decisions are available, *Robertshaw Controls v. Pre-Engineered Products, Co.*, 669 F.2d 298, 300 (5th Cir.1982), we reverse and remand.

## DISCUSSION

### A.

The Uniform Commercial Code, as adopted by Texas, states: "An instrument is converted when ... it is paid on a forged indorsement." Tex.Bus. & Com.Code Ann. § 3.419(a)(3) (Vernon 1968).[1] When a bank accepts for deposit a check whose endorsement is forged, the person to whom the proceeds of the check rightfully belong may sue the bank in tort for conversion. Section 3.419(c) altered the common law by

---

1. Unless otherwise noted, all statutory citations are to Tex.Bus. & Com.Code (Vernon 1968).

providing that a bank is not liable "in conversion or otherwise" if it has acted "in good faith and in accordance with the reasonable commercial standards" applicable to the banking industry.[2] A defendant may also assert, as did appellee here, the two year statute of limitations applicable to conversion.

■ The common law also provides a plaintiff pained by such pecuniary perfidy an action in contract—with a four year statute of limitations, which has not expired in this case—for money had and received. This venerable equitable doctrine

holds that a collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery.

*Fidelity & Deposit Co. of Maryland v. Fort Worth National Bank,* 65 S.W.2d 276, 278 (Tex.Comm'n App.1933). As defenses, the bank may assert laches, fault by the payee, or ratification or authorization of the forged endorsement. *Id.*

■ The question presented is whether an action for money had and received survived the passage of the U.C.C. in Texas. The starting point for our answer is § 1.103, which reads, in pertinent part, as follows:

Unless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions.

The question therefore becomes whether the particular provisions of the U.C.C. have *displaced* the common law action for money had and received.

The parties disagree as to the degree of displacement required. Pointing to Comment 1 to § 1.103 and *Hechter v. New York Life Insurance Co.,* 46 N.Y.2d 34, 412 N.Y. S.2d 812, 385 N.E.2d 551 (1978), appellants claim that nothing less than *explicit* displacement will do.[3] Texas Commerce, on the other hand, relies on *Bryan v. Citizens National Bank in Abilene,* 628 S.W.2d 761 (Tex.1982) for the proposition that any *conflict* between the Code and the common law leaves the common law action mortally wounded. We agree with Texas Commerce that *Bryan,* a decision of the highest court in the state whose law we must apply, supplies the rule of decision; we do not agree, however, that *Bryan* requires that the slightest hint of a conflict extinguish the common law action completely.

In *Bryan,* a bank sought to recover funds over a stop payment order. The question presented was whether the bank proved a common law cause of action for restitution of funds paid by mistake. Bryan, the payee, contended that § 4.407 of the Code provided the bank's sole remedy. Section 4.407 requires that a bank must, in order to recover, assert any defenses that its customer might have against the payee. Because the Texas common law action for restitution required no such proof of the bank, Bryan argued that it had been displaced by the U.C.C.

The Texas Supreme Court, however, held that § 4.407 was not the bank's exclusive remedy, and that the bank could recover restitution for funds paid by mistake, but

---

**2.** Section 3.419(c) reads:

Subject to the provisions of this title concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

**3.** Comment 1 reads in part: "[T]his section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act...." *Hechter,* discussed in more detail *infra,* requires that the U.C.C. speak in "unmuted strains" in order to displace the common law. 412 N.Y.S.2d 814, 385 N.E.2d at 554.

only to the extent that it alleged and proved that its customer had a defense to the check. Thus, the Court agreed with the bank that a common law right to restitution still exists, but only to the extent that it "does not conflict with Code provisions." *Id.* at 764.

However, *Bryan* provides no support for the proposition that the displacement must be explicit. On the contrary, the provisions found to conflict with the common law did so implicitly by adding an element to the cause of action where none had previously existed. *Bryan* therefore simply requires that any inconsistencies between the various elements of the common law action and the particular provisions of the code be resolved in the Code's favor. *Id.; cf.* § 1.102 (underlying purpose and policy of the Code is "to simplify, clarify and modernize the law"). *Bryan* does not, contrary to Texas Commerce's position, propose that any inconsistencies and conflicts provide a license to throw the clean baby out with the dirty bathwater.

Turning to the facts in this case, we can discern no meaningful conflicts or inconsistencies between a U.C.C. action for conversion and a common law action for money had and received other than those of the type present in *Bryan*. Aside from the differences in their respective statutes of limitations, the only significant difference between the two is the lack of the defenses of "good faith" and adherence to "reasonable commercial standards" in an action for money had and received. This difference is no more than the type found in *Bryan*. As such, it does not require the displacement of the common law action altogether, but only requires that an action for money had and received accommodate the additional defenses provided by the Code.

■ *Fidelity & Casualty Company v. First City Bank of Dallas,* 675 S.W.2d 316 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), does not, contrary to appellee's assertion, support its position. There, the operation of § 3.418's final payment rule precluded an action for money had and received. Generally, a forged endorsement is ineffec-

tive to pass title to a collecting bank. This failure to pass title lies at the heart of an action for money had and received. Section 3.405(a)(3) however, provides a "fictitious payee" exception to the general rule:

> (a) An endorsement by any person in the name of a named payee is effective if:

> > (3) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

"The effect of the section is to render a forged endorsement effective to transfer title." *Fidelity & Casualty Company,* 675 S.W.2d at 318. The effective transfer of title undermines completely an action for money had and received. The court took care, however, to distinguish those cases "in which the [malefic] employees intercepted checks that represented 'legitimate and bona fide payments due and owing.'" *Id.* at 319. In the case at bar, Menier allegedly intercepted legitimate and bona fide payments. His forged endorsements were therefore ineffective to transfer title to Texas Commerce, and Texas Commerce therefore lacks the protection of a holder in due course under the final payment rule of § 3.418.

Appellee contends as well that an action for money had and received conflicts with § 3.419's creation of "a loss allocation scheme." To the extent we can discern what appellee means by the somewhat mystic and sweeping incantation of these words, we disagree. Both § 3.419 and the common law generally allocate the loss to the party who took the check from the forger, or to the forger herself. *See Perini Corp. v. First National Bank of Habersham County,* 553 F.2d 398, 404 (5th Cir.1977); Comment, *Forged Indorsements, Depositary Banks, and the Defense of Section 3-419(3) of the Uniform Commercial Code,* 18 Hous.L.Rev. 173, 180 (1980). The Code alters this allocation scheme only when, as in *Fidelity & Casualty Company,* the forger's employer has the better opportunity to prevent the fraud, or when the bank that takes from the forg-

er acted in good faith or in accordance with reasonable commercial standards. The general presumption that the loss is borne by the party who takes from the forger continues under the Code. Therefore, the argument that the Code creates an entirely new loss allocation scheme at odds with the common law action for money had and received must fail.

The clearest evidence that common law actions for payment on forged endorsements survived the passage of § 3.419 is in the language of that section itself. Subsection c speaks of liability "in conversion *or otherwise*" (emphasis added). The New York Court of Appeals, one of only two highest state tribunals to consider this question, has held that

> The "or otherwise" language, rather than indicating an intent to eliminate common-law theories of recovery, suggests that all pre-code actions regardless of form are to continue, subject to whatever limitations are prescribed by section 3–419.

*Hechter v. New York Life Insurance Co.,* 46 N.Y.2d 34, 39, 412 N.Y.S.2d 812, 815, 385 N.E.2d 551, 554 (1978) (holding that the U.C.C. did not displace an action for money had and received). The Supreme Court of Colorado also has held that "The phrase 'or otherwise' only has meaning if the drafters anticipated a cause of action other than conversion, *e.g.,* an action for moneys had and received." *Citizens State Bank v. National Surety Corporation,* 199 Colo. 497, 612 P.2d 70, 72 (1980). We find the reasoning of these opinions persuasive and we are confident that the Supreme Court of Texas would reach the same result.

### B.

■ Texas Commerce's remaining argument—that Peerless lacks standing to pursue this appeal—need not detain us long. Before Peerless can recover the $500,000 it paid to North American, it must first apply any recovery from Texas Commerce to North American's remaining losses, the $775,880.12 difference between the loss allegedly sustained by North American ($1,275,880.12) and the amount paid to it by Peerless ($500,000). Because Texas Commerce's total exposure is apparently less than $775,880.12, Texas Commerce asserts that Peerless lacks a financial stake in the case, as any recovery from Texas Commerce will benefit North American, not Peerless.

Whether styled as a "standing" argument or more properly as an assertion that Peerless is not a real party in interest, Texas Commerce's claim is frivolous. Peerless has a real pecuniary interest in this case. Any recovery from Texas Commerce reduces Peerless' obligation to North American and brings Peerless closer to the point where it can begin, through proceedings against other parties, to recover the money it paid to North American. If each responsible party's liability were less than $775,880.12, then Texas Commerce's argument would forever deny Peerless its right to pursue recovery of its $500,000. We refuse to accept such a result.

### CONCLUSION

When he decided to forsake the placid world of coffee filters for the feast or famine of fakes and forgeries, probably nothing was farther from Vincent Menier's mind than the question of whether the Uniform Commercial Code laid to rest the common law action for money had and received. The question is, however, close to our minds now, and we decide that the U.C.C. did not displace this common law action. Accordingly, the judgment of the district court against Peerless and North American for failure to state a claim is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**