812 F.2d 906
 3 UCC Rep.Serv.2d 1035
 EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellee,
v.
Charles L. OKEY, III; First Citizens Bank & Trust Company
of South Carolina; National Bank of South Carolina; Rock
Hill National Bank; Citizens & Southern National Bank of
South Carolina; Bankers Trust of South Carolina and
Southern Bank & Trust Company, Defendants,
and
First National Bank of South Carolina, Appellant.
EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant,
v.
Charles L. OKEY, III; First Citizens Bank & Trust Company
of South Carolina; National Bank of South Carolina; Rock
Hill National Bank; Citizens & Southern National Bank of
South Carolina; Bankers Trust of South Carolina and
Southern Bank & Trust Company, Defendants,
and
First National Bank of South Carolina, Appellee.
 Nos. 86-3512, 86-3519.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 13, 1986.
Decided March 4, 1987.
 
 Elizabeth A. Carpenter (Manton M. Grier, Boyd, Knowlton, Tate & Finlay, P.A., L. Henry McKellar, S.C. Nat. Bank, on brief), for appellant.
 Michael S. Church, W. Duvall Spruill (Turner, Padget, Graham & Laney, on brief), for appellee.
 Before PHILLIPS and SPROUSE, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Equitable Life Assurance Society (Equitable) brought U.C.C. conversion and common law negligence claims against First National Bank of South Carolina (First National), based on First National's acceptance for deposit of checks made payable to Equitable, upon the unauthorized indorsement of Equitable agent Charles Okey. On the same basis, Equitable asserted U.C.C. conversion claims against six banks on which the checks were drawn and against Okey and, as subrogee of the drawers' claims, asserted that the drawee banks were liable for improperly charging the drawers' accounts. A jury returned special verdicts finding First National liable to Equitable in negligence but not in code conversion and the drawee banks not liable on the code conversion or improper charging claims. The district court ordered a new trial on Equitable's code conversion claim against First National, presumably on the basis of inconsistency in the jury verdicts on the conversion and negligence claims, and entered judgment for the drawee banks and in favor of Equitable against First National on the negligence claim. First National appealed from the judgment against it on the negligence claim, and Equitable cross-appealed from the court's refusal to award prejudgment interest or to allow the jury to award punitive damages. We vacate the judgment against First National on Equitable's common law negligence claim, concluding that that cause of action has been displaced by the code conversion claim; in all other respects we find the assigned errors mooted, observing that Equitable's code conversion claim against First National remains for re-trial on the district court's unappealable order to that effect.
 
 
 2
 * Charles L. Okey, III, an Equitable agent, received customer checks made payable to Equitable for insurance premiums and equity investments, but instead of forwarding the checks to Equitable, he personally indorsed them and deposited them in his personal account at First National. First National, as depositary bank, indorsed the checks and presented them to the drawee banks, which in turn paid the items and returned the checks to the customers in their monthly statements. Okey remitted to Equitable only part of the amount of the customer payments, sending either his personal checks or cashiers' checks, and embezzled the balance. The total of his embezzlement amounted to approximately $1.4 million.
 
 
 3
 Because bank policy requires written authorization from the payee before an individual may deposit a corporate check into a personal account, two of First National's officers sought written and oral confirmation that Okey had the requisite authority. They telephoned Equitable's Rock Hill office and received oral assurance by a woman who answered the telephone that Okey was authorized to deposit Equitable's checks into his account. The woman promised to send written authorization, and in a few days the bank received a copy of Okey's district manager's contract which included the following provision with the emphasized language underlined in red:
 
 
 4
 when authorized in writing by the Society [the manager] shall audit the accounts of agents and aid in collecting premiums and other moneys due to the Society from agents and policyowners and in general do all in his power to promote the Society's interest.
 
 
 5
 Another part of this contract provided that "[t]he Manager shall not receive any monies due or to become due to the Society, unless authorized in writing." Not completely satisfied with this authorization, the officers again called Equitable's Rock Hill office and spoke with the same woman, who was asked whether Equitable had any other written authorization more specifically addressed to depositing checks. The woman told Lane that the district manager's contract she sent to him was the authorization used for that purpose.
 
 
 6
 The two bank officers conferred. One of them knew of Okey through a highly respected member of the Florence, South Carolina, community and also knew of Okey's good reputation as a top Equitable agent. Based on this knowledge of Okey's character, the district manager's contract, and the two phone calls to Equitable's Rock Hill office, the officers decided to accept the checks. It is this conduct in the ascertainment of Okey's authority that Equitable asserts constituted negligence.
 
 
 7
 In answers to special interrogatories, the jury found First National liable in negligence but not in conversion. The jury also found in favor of the drawee banks on the conversion and improper charging claims against them. Presumably to reconcile inconsistency in the jury's finding of negligence but not conversion against First National, the district court ordered a new trial on the conversion claim and entered judgment against First National in negligence, after denying First National's motion for judgment n.o.v.
 
 
 8
 These appeals followed.
 
 
 9
 On its appeal, First National contends that it should have been awarded judgment n.o.v. on the negligence claim on the basis that as a matter of law Okey had either express, implied, or apparent authority; Equitable ratified Okey's conduct; First National was not negligent; Equitable was contributorily negligent; and on the further basis that as a matter of law Equitable's claim was barred by laches, limitations, estoppel and the compensated surety defense.
 
 
 10
 On its cross-appeal, Equitable assigns as error the district court's refusal to award it prejudgment interest on its negligence judgment and its refusal to allow the jury to consider an award of punitive damages.
 
 
 11
 We take the appeal and cross-appeal in that order.
 
 II
 
 12
 Because we consider it dispositive of First National's appeal of the judgment entered on the negligence verdict, we consider first First National's contention that the common law negligence claim in respect of payment on an unauthorized indorsement has been displaced by the code conversion claim under S.C. Code Sec. 36-3-419 (1977). We agree with First National.
 
 
 13
 Under Sec. 36-3-419 of the South Carolina Commercial Code, an action for conversion lies when an instrument is paid on a forged indorsement. An unauthorized indorsement receives the same treatment as a forgery. Anderson, Uniform Commercial Code Sec. 3-419.4 (3d ed. 1981). Although styled a "conversion," an action under Sec. 36-3-419 effectively subsumes both conversion and negligence claims based on payment over a forged or unauthorized indorsement in that Sec. 36-3-419(3) encompasses the element of due care that is a key issue under a negligence theory. Section 36-3-419(3) provides that
 
 
 14
 a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.
 
 
 15
 The "reasonable commercial standards" that limit a collecting or depositary bank's liability under Sec. 36-3-419(3) has been interpreted to be the same "due care" that provides the standard of care in a negligence action. Anderson, supra Sec. 3-419.35 (the Code language in Sec. 3-419(3) is identified with the common law concept of negligence). The allocation of the burden of proving due care under Sec. 3-419(3), however, differs from the allocation of that burden in a negligence action and to that extent conflicts with the common law. Section 36-3-419(3) makes reasonable conduct an affirmative defense to be proved by the defendant collecting or depositary bank. National Bank of Georgia v. Refrigerated Transport Co., 147 Ga.App. 240, 248 S.E.2d 496, 499 (1978) (quoting Berkheimers, Inc. v. Citizens Valley Bank, 270 Or. 807, 529 P.2d 903 (1984)). In a common law action for negligence, on the other hand, the plaintiff has the burden of establishing a lack of due care as one of the essential elements of his claim.
 
 
 16
 In deciding whether the common law action for negligence is displaced by the Sec. 36-3-419 conversion claim, the first authority to consider is Sec. 36-1-103, which sets the general standard for displacement of the common law by the Code:
 
 
 17
 Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
 
 
 18
 Our task is to determine whether Sec. 36-3-419 is a "particular provision" that displaces the common law. We believe that the coverage of Sec. 36-3-419 and its allocation of the burden of proof of the element of due care in a way that differs from that in common law negligence demonstrate an intended displacement of the negligence cause of action.
 
 
 19
 We note first the overlapping nature of the two theories. An action under Sec. 36-3-419(1)(c) lies when (1) an instrument belonging to plaintiff (2) is paid on an indorsement made without authority and when the collecting bank fails to prove its due care in ascertaining the authority. The negligence that Equitable claims in this case is First National's lack of due care in paying over an unauthorized indorsement without taking reasonable steps to ascertain whether Okey was authorized. Thus, both negligence and conversion require a consideration whether there was payment over an unauthorized indorsement and evaluation of the reasonableness of the defendant's actions. This duplication suggests that the Code cause of action comprehensively covers the field of legal theories available when a check is paid over an unauthorized indorsement. See New Jersey Bank, N.A. v. Bradford Securities Operations, 690 F.2d 339, 346 (3d Cir.1982); First Georgia Bank v. Webster, 168 Ga.App. 307, 308 S.E.2d 579, 581 (1983); Joffe v. United California Bank, 141 Cal.App.3d 541, 190 Cal.Rptr. 443, 452 (2d App.Dist.1983). At least one commentator has opined that when the Code and common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the Uniform Commercial Code. R. Hillman, Construction of the Uniform Commercial Code: UCC Section 1-103 and "Code" Methodology, 18 B.C. Indus. & Comm.L.Rev. 655, 662-63 (1977); see also S.C.Code Sec. 36-1-102 (purpose of Code is "to simplify, clarify, and modernize ... [and] to make uniform the law among the various jurisdictions").
 
 
 20
 The overlapping nature of the claims combined with the conflicting burdens for proving the critical element of due care, further argues for displacement. Requiring a plaintiff to prove due care in effect exacts from him a greater burden than the Code contemplates, for the Code imposes an absolute liability against a bank that commits the act of paying over an unauthorized indorsement unless the bank can prove its own due care. When the U.C.C. sets up particular standards of care or limitations on liability, the common law is annulled to the extent it modifies these standards or changes these limitations. See Childs v. Federal Reserve Board, 719 F.2d 812, 814-15 (5th Cir.1983).
 
 
 21
 The conflict between the differing burdens of proof is particularly emphasized in the formulation of jury instructions and in the jury's inevitable confusion in keeping the burdens straight. The palpably inconsistent verdicts reached in this case are an illustration of the problems anticipated. The jury found First National negligent, which means that it believed Equitable had borne successfully its burden of demonstrating that the bank acted unreasonably in failing to ascertain Okey's lack of authority. The same jury, however, found First National not liable in conversion, which means that it believed the bank either did not pay over an unauthorized indorsement--a finding that would be inconsistent with the finding of negligence--or, if it did pay over an unauthorized signature, that it acted reasonably in concluding that Okey had authority. How the bank can manage to convince a jury that it acted reasonably while the same jury is persuaded by the plaintiff that the same bank acted unreasonably is beyond imagination. Elimination of the negligence cause of action would remedy the kind of inconsistency and confusion obviously reflected in the conflicting negligence and conversion verdicts here.
 
 
 22
 Finally, we note in support of our conclusion that the common law negligence and code conversion claims for payment on unauthorized indorsements are in basic conflict, that contributory negligence remains a defense to the former, see, e.g., Williams v. Kinney, 267 S.C. 163, 226 S.E.2d 555, 557 (1976), but is not available as a discrete defense to the latter. The code conversion provision is said by the official comments to S.C.Code Sec. 36-3-419 to be intended as a codification of common law conversion. In common law conversion, contributory negligence was no defense. See W. Prosser, Law of Torts Sec. 65, at 426 (1971). Code conversion under Sec. 36-3-419 thus imposes absolute liability unless the defendant can prove good faith and due care; the claimant's lack of care is thus irrelevant. Cf. S.C.Code Sec. 36-3-406 (drawee, payor, or holder in due course may assert claimant's negligence as defense only when defendant has acted with due care and in good faith). On the other hand, in common law negligence, a claimant's lack of due care defeats her claim even where the unauthorized payor has acted without due care--i.e., negligently.
 
 
 23
 We recognize that other courts have found that the common law action for money had and received survives enactment of Sec. 3-419. See, e.g., Peerless Insurance Co. v. Texas Commerce Bank--New Braunfels, N.A., 791 F.2d 1177 (5th Cir.1986); Hechter v. New York Life Insurance Co., 46 N.Y.2d 34, 412 N.Y.S.2d 812, 385 N.E.2d 551 (N.Y.Ct.App.1978). Those courts have reformed the action for money had and received to accommodate the U.C.C. affirmative defenses of good faith and reasonableness. E.g., Peerless, 791 F.2d at 1180. Meshing a negligence claim with the code is not so easily accomplished because a prime element of negligence--absence of due care--also appears in the Code but in a different posture procedurally. It is not possible, as it was for the claim of money had and received, simply to add or subtract elements of the claim. To the extent negligence could be reformed to fit Sec. 36-3-419's proof burdens on the due care issue, the negligence action would have no independent significance apart from the Code.
 
 
 24
 Moreover, the money had and received cases relied on the language of Sec. 3-419(3) that a collecting or depositary bank acting with due care is not liable "in conversion or otherwise." E.g., Peerless, 791 F.2d at 1181; Hechter, 385 N.E.2d at 554. Courts have held that the language "or otherwise" must mean that other theories of recovery besides negligence are available and are limited only by a collecting or depositary bank's ability to show due care. While this argument might have force in the money had and received cases, it makes little sense in the negligence context. In that context, Sec. 36-3-419(3) would mean that once a defendant has demonstrated due care, he cannot be liable in negligence--negligence here supplying the specific "otherwise." The effect of this is to place the burden of reasonableness on defendant, in thorough discord with the prima facie case in common law negligence.
 
 
 25
 We also recognize that a significant difference between the negligence and conversion claims from the plaintiff's point of view is the measure of damages. Section 36-3-419(2) gives as a presumptive measure of damages the face amount of the instrument. South Carolina further awards interest in a conversion action from the time of the conversion. Mack v. Riley, 282 S.C. 100, 316 S.E.2d 731, 733 (App.1984); see also Anderson, supra Sec. 3-419.33 (noting that whether prejudgment interest is recoverable depends on non-Code law, the Code itself making no provision for recovery of interest). By contrast, the negligence claim does not give rise to prejudgment interest, see, e.g., Llewelyn v. Dobson Brothers, 274 S.C. 177, 262 S.E.2d 726, 727 (1980), but would give rise to a potentially larger recovery, depending on what damages are foreseeable. We do not believe, however, that preservation of remedial rights should triumph over the more fundamental concerns of establishing the essential elements of a tort in a unified way, as contemplated by the Code drafters.
 
 
 26
 Our task here has been to find what the South Carolina Supreme Court would hold to be the legislative intent regarding Sec. 36-3-419 and its interaction with the common law cause of action for negligence in respect of the conduct covered by Sec. 36-3-419. In this we work unaided by any guidance from the relevant South Carolina authorities. The cumbersomeness of dealing simultaneously with two causes of action that incorporate the same elements under varying proof burdens, when the only conceptual reason for considering both still viable is their somewhat different measures of damages, convinces us that the South Carolina courts would find displacement in this case. We therefore vacate the judgment of negligence against First National.
 
 
 27
 This disposition effectively relegates Equitable to its possible remedy on the code conversion claim against First National, a claim which per the district court's unappealable order stands for new trial. It also obviates any necessity to consider First National's other bases for challenging the judgment entered on the negligence claim.
 
 III
 
 28
 Equitable's cross-appeal challenging the district court's refusal to award prejudgment interest or to allow the jury to consider a punitive damage award on the negligence claim, are effectively mooted by our holding that Equitable was not entitled to any recovery in common law negligence. As indicated, prejudgment interest may be recovered as an incident to any basic liability established under the code conversion claim now pending for new trial. As to whether punitive damages may also be recovered incident to that pending claim, we need now express no opinion.
 
 
 29
 VACATED AND REMANDED.