# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 13-20293

—————

COASTAL AGRICULTURAL SUPPLY, INCORPORATED,

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2014

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

JP MORGAN CHASE BANK, N.A.,

Defendant - Appellee

—————

Appeal from the United States District Court
for the Southern District of Texas

—————

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Coastal Agricultural Supply, Incorporated brings this interlocutory appeal on two questions of law, namely whether § 3.405 of the UCC can serve as an affirmative defense to a common law "money had and received" claim, and whether settlement credits in Texas reduce the nonsettling defendant's liability rather than the plaintiff's total loss. For the reasons stated below, we AFFIRM and REMAND for proceedings consistent with this opinion.

I

Coastal Agricultural Supply, Incorporated ("Coastal") sells farm and ranch equipment and supplies. For more than 20 years, Jimmy Hollaway worked for Coastal, and, for the time period relevant to this case, he worked for Coastal as a bookkeeper in its Houston office. As bookkeeper, Hollaway's

No. 13-20293

duties included receiving checks made payable to Coastal from customers, indorsing those checks on Coastal's behalf as "for deposit only," and depositing those checks into Coastal's account at Traditions Bank. He did so for many years.

On June 30, 2000, Hollaway acquired an "Assumed Name Records Certificate of Ownership for Unincorporated Business or Profession" identifying him as the owner of a business called "Coastal Agricultural Limestone Supply." On July 11, Hollaway opened a checking account with JP Morgan Chase Bank, N.A. ("Chase Bank").[1] The name on the account was "Jimmy Hollaway DBA Coastal Agricultural Limestone Supply."

Over the next few years, Hollaway deposited at least 964 checks intended for Coastal into his account at Chase Bank. While most of the checks were deposited in person, 81 checks were deposited through an automated teller machine ("ATM").[2] In all, Hollaway is alleged to have stolen more than $2.5 million and used a significant portion of the money to purchase real estate and other assets.

On February 14, 2011, Coastal filed a lawsuit against Hollaway in Texas state court, seeking damages for the money stolen and deposited into his bank account. Coastal asserted claims based on breach of statutory duty, conversion, "money had and received," and breach of fiduciary duty. Coastal sought actual, statutory, and punitive damages, attorney's fees, the imposition of a constructive trust and equitable lien, a temporary restraining order and

---

[1] The record reflects that the account was opened with "Chase Bank of Texas, National Association." In its brief, appellee JP Morgan Chase, N.A. represents that it is the same institution, the account was opened with its branch, and it is a wholly owned subsidiary of JP Morgan Chase & Co., a separate institution.

[2] Chase Bank has images for 962 out of 964 checks. While it does not have images of the two remaining checks, it was able to establish that one was deposited without an image taken and the other was deposited as a "cash in ticket" or a cash deposit.

injunction, the appointment of a receiver, post-judgment interest and costs, and any other available legal and equitable relief. On March 6, 2012, Coastal and Hollaway entered into a settlement agreement, under which Hollaway conveyed three residential properties, mineral interests, monetary assets, and a portion of his personal property to Coastal. Chase Bank estimates the value of this settlement to be at least $556,100, while Coastal claims that it is at most $313,311.

Meanwhile, on May 24, 2011, Coastal filed the present lawsuit against Chase Bank in the United States District Court for the Southern District of Texas, asserting claims of conversion and negligence under the Texas Uniform Commercial Code ("UCC")[3] and money had and received under the common law. Coastal sought actual damages, attorney's fees on its money had and received claim, pre-judgment and post-judgment interest, court costs, and any other available legal and equitable relief. The case was referred to the magistrate judge.

On November 15, 2012, Chase Bank filed two motions for partial summary judgment. In its first motion, Chase Bank argued that Coastal's claims as to some of the checks were barred by the statute of limitations, but that in any case, under Texas law it was protected from liability as to all the checks under UCC § 3.405. In its second motion, Chase Bank sought a settlement credit of $556,100 based upon the settlement agreement between Coastal and Hollaway. Coastal filed responses to these motions, and Chase Bank filed a reply in support of its second motion.

---

[3] Texas has adopted various articles of the UCC. *See generally* Uniform Commercial Code, Tex. Bus. & Com. Code Ann. §§ 1.101 to 11.108; *id.* §§ 10-101 to 10-105. As relevant to this appeal, Revised Article 3 dealing with negotiable instruments was adopted in 1996. *See* Uniform Commercial Code—Negotiable Instruments, Tex. Bus. & Com. Code Ann. §§ 3.101 to 3.805; *Ross v. Bank of Am. N.A.*, 693 F. Supp. 2d 692, 693 (S.D. Tex. 2010).

No. 13-20293

The magistrate judge issued a memorandum and recommendation on the two motions for partial summary judgment. Addressing the first motion, the magistrate judge found that the statute of limitations defense was waived by Chase Bank. For the UCC conversion and negligence claims, the magistrate judge found that UCC § 3.405 provided a defense for Chase Bank, and that, based on this defense, Chase Bank was entitled to summary judgment for all but 82 checks—the 81 checks deposited via an ATM, worth $116,454.75, and the one check marked as a cash deposit, worth $1,980, for a grand total of $118,434.75. For the money had and received claim, the magistrate judge found that Chase Bank had presented no argument for summary judgment and therefore denied summary judgment on this claim. Addressing the second motion, the magistrate judge found that under the Texas "one satisfaction rule" a settlement credit should be applied against whatever liability Chase Bank might eventually have, but did not address the valuation of the settlement between Coastal and Hollaway.

Both Coastal and Chase Bank filed objections to the magistrate judge's memorandum and recommendation. In an April 3, 2013 order, the district court conducted a *de novo* review of the magistrate judge's recommendations to which objections were raised, and decided to adopt the memorandum and recommendation in part. For the UCC conversion and negligence claims, the district court agreed with the magistrate judge and granted summary judgment on the 882 checks that were deposited in person at the bank, leaving for trial the 81 checks deposited via ATM and the one check deposited as a cash deposit. For the money had and received claim, the district court disagreed with the magistrate judge, and held that Chase Bank had moved for summary judgment on this claim as well. Finding that § 3.405 was applicable to the money had and received claim, the district court granted Chase Bank summary judgment on this claim as to the 882 checks deposited in person. The district

4

court denied summary judgment on the money had and received claim as to the 81 checks deposited via ATM and the one check deposited as a cash deposit.

For the settlement credit issue, the district court adopted the magistrate judge's recommendation that Chase Bank was entitled to the value of the settlement. The district court found that there was still an issue about the value of the settlement, but held that whatever that value, it should be applied against Chase Bank's liability rather than to lessen Coastal's total loss. The district court noted that based on its grant of summary judgment on the 882 checks on the conversion, negligence, and money had and received claims, Chase Bank's potential liability was only $118,434.75. The district court opined that the application of the settlement credit would likely extinguish Coastal's claims against Chase Bank.

Coastal then made an oral motion for an interlocutory appeal under 28 U.S.C. § 1292(b), and the district court granted the motion because its ruling involved controlling questions of law as to which there were substantial grounds for difference of opinion. Thereafter, while Coastal was petitioning this Court for leave to appeal, there was a dispute between Coastal and Chase Bank on the scope of the interlocutory appeal. The district court entered a clarification order on May 1, 2013 stating that only two issues were certified for appeal:

> (1) the [district court's] determination that the defendant could oppose a common law claim for money had and received by asserting the affirmative defenses supplied in section 3.405 of the UCC and (2) the [district court's] determination that Texas requires that settlement credits be applied such that the credit reduces the non-settling defendant's liability rather than reducing the amount of Plaintiff's total loss.

We then granted Coastal leave to appeal from the April 3rd interlocutory order, but specified that leave was granted only as to those issues articulated in the

No. 13-20293

May 1st clarification order and denied as to all other issues. We now turn to those two issues.

## II

We review a district court's order granting summary judgment *de novo* applying "the same legal standards that the district court applied to determine whether summary judgment was appropriate."[4] A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[6]

The movant bears the initial burden and must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[7] But the movant "need not *negate* the elements of the nonmovant's case."[8] "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[9]

The burden then shifts to the nonmovant to demonstrate a genuine issue of material fact, but the nonmovant cannot rely on the allegations in the pleadings alone.[10] Instead, the nonmovant "must go beyond the pleadings and

---

[4] *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433–34 (5th Cir. 2005).

[5] Fed. R. Civ. P. 56(a).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

[8] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[9] *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotation marks omitted).

[10] *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, 349–50 (5th Cir. 2005).

No. 13-20293

designate specific facts showing that there is a genuine issue for trial."[11] "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[12]

Finally, we "review *de novo* a district court's determination of state law, granting no deference to its interpretation."[13]

III

We turn first to whether the district court erred in determining that Chase Bank could oppose a common law claim for money had and received by asserting the affirmative defense supplied under UCC § 3.405.[14]

Coastal admits that the issue as certified by the district court can only be answered in the affirmative. Chase Bank argues that the district court was correct in holding that § 3.405 is an affirmative defense to a money had and received claim. We agree. The district court did not err in holding that § 3.405 provides an affirmative defense against a money had and received claim. A money had and received claim is an equitable doctrine at common law that

> holds that a collecting bank which accepts a check on another bank on a forged indorsement acquires no title thereto, and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery.[15]

---

[11] *Boudreaux*, 402 F.3d at 540 (internal quotation marks omitted).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[13] *Am. Reliable Ins. Co. v. Navratil*, 445 F.3d 402, 404 (5th Cir. 2006).

[14] Tex. Bus. & Com. Code Ann. § 3.405 (West 2002 & Supp. 2014).

[15] *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1179 (5th Cir. 1986) (quoting *Fidelity & Deposit Co. of Md. v. Fort Worth Nat'l Bank*, 65 S.W.2d 276, 278 (Tex. Comm'n App. 1933)).

No. 13-20293

At common law, the collecting bank could assert the defenses of laches, fault by payee, or ratification or authorization of the forged indorsement.[16]

In § 3.405, the UCC provides an affirmative defense for a collecting bank that accepts a check on a forged indorsement. This provision is often called the "imposter" or the "padded payroll" rule and it "represents a policy decision to place certain losses on the employer."[17] As the Texas Supreme Court has noted, § 3.405 is one of several comparative negligence provisions in Revised Article 3 of the UCC.[18] Entitled "Employer's Responsibility for Fraudulent Indorsement by Employee," § 3.405 provides in relevant part:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.[19]

---

[16] *Id.* (citing *Fidelity & Deposit Co. of Md.*, 65 S.W.2d at 278).

[17] *British Caledonian Airways Ltd. v. First State Bank of Bedford, Tex.*, 819 F.2d 593, 596 (5th Cir. 1987).

[18] *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 107–08 (Tex. 2004) (noting that provisions like § 3.405 "evince a shift away from strict liability for banks that convert checks to a fault-based system").

[19] Tex. Bus. & Com. Code Ann. § 3.405 (West 2002 & Supp. 2014).

Thus, where (1) a bank acted in good faith, (2) the embezzler was an employee entrusted with responsibility for the check, and (3) the check was fraudulently indorsed, the bank escapes liability, but (4) with the proviso that it remains liable for any loss to the extent it failed to exercise ordinary care. The bank must bear the burden of proving the first three elements.[20] Once the bank meets this burden, the burden shifts to the employer to present evidence raising a fact issue on whether the bank failed to exercise ordinary care with respect to the check.[21]

The underlying purposes and policies of the UCC are "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions."[22] To that end, the UCC has to be liberally construed and applied.[23] But the UCC does not automatically eliminate the common law. "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."[24]

Both the Texas Supreme Court and our Court have recognized situations where instead of displacing the common law altogether, the UCC modifies the

---

[20] *Venetian Blind & Floor Covering, Ltd. v. Wells Fargo Bank, N.A.*, Civ. No. H-08-2451, 2010 WL 547152, at \*2 (S.D. Tex. Feb 9, 2010); *Hanh H. Duong v. Bank One, N.A.*, 169 S.W.3d 246, 254 (Tex. App.—Fort Worth 2005, no pet.).

[21] *Venetian Blind & Floor Covering, Ltd.*, 2010 WL 547152, at \*2; *Hanh H. Duong*, 169 S.W.3d at 254.

[22] Tex. Bus. & Com. Code Ann. § 1.103(a) (West 2009).

[23] *Id.*

[24] *Id.* § 1.103(b).

common law. In *Bryan v. Citizens National Bank in Abilene*,[25] a bank paid a check over a stop-payment order from its customer, the drawer.[26] The customer had issued the check to the drawee because of a contract between the customer and the drawee.[27] After the mistaken payment, the bank sued the drawee under a common law restitution claim.[28] By using the restitution claim, the bank could recover by showing that the payment was make in mistake, and the drawee had the burden of showing that he was a holder in due course or had changed his position in reliance upon the payment in order to defeat the restitution claim.[29] The drawee claimed that the enactment of the UCC effectively abolished this common law claim, and that the bank's only remedy was § 4.407 of the UCC, which essentially provided a subrogation cause of action.[30] Under § 4.407, the bank recovered by stepping into the shoes of the party allegedly entitled to the funds—the drawer.[31] Therefore, if it brought an action under § 4.407, the bank would have been required to assert in a breach of contract suit any defenses the drawer might have had against the drawee.[32] The Texas Supreme Court held that the UCC was not the bank's only remedy, that the common law restitution claim was not preempted, but that "the bank [could] recover restitution only to the extent that it allege[d] and prove[d] that the drawer had a defense to the check."[33] Thus, the common law can "only continue in a form that does not conflict with [UCC] provisions."[34] Similarly,

---

[25] 628 S.W.2d 761 (Tex. 1982).

[26] *Id.* at 761–62.

[27] *Id.* at 761.

[28] *Id.* at 762.

[29] *Id.* at 762.

[30] *Id.*; Tex. Bus. & Com. Code Ann. § 4.407 (West 2002).

[31] *Bryan*, 628 S.W.2d at 762.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 764.

in *Peerless Insurance Co. v. Texas Commerce Bank-New Braunfels, N.A.*,[35] our Court also recognized that the common law is modified by the UCC. In that case, an employee indorsed and deposited checks payable to his employer into his personal bank account.[36] The employer and its insurer sued the bank on three causes of action, including a money had and received claim.[37] At the time, the UCC had a cause of action for conversion different from the one currently in force.[38] The UCC's conversion provision changed the common law by providing that a bank could escape liability for conversion or *otherwise* if it had acted in good faith and in accordance with reasonable commercial standards.[39] We held that *Bryan* does not stand for the proposition that any conflict between the common law and the UCC results in the automatic displacement of the common law, but rather that "any inconsistencies between the various elements of the common law action and the particular provisions of the [UCC] must be resolved in the [UCC's] favor."[40] Thus, we held that the money had and received claim had to accommodate the additional defenses provided by the UCC conversion provision as it then stood.[41]

Here, the conflict between the money had and received claim at common law and § 3.405 can be resolved without entirely displacing the money had and received claim. Rather, the money had and received claim as applied in this situation must simply incorporate the affirmative defense provided by § 3.405. The district court did not err in its determination that this affirmative defense could be so applied.

---

[35] 791 F.2d 1177 (5th Cir. 1986).

[36] *Id.* at 1178.

[37] *Id.*

[38] *Compare* Tex. Bus. & Com. Code Ann. § 3.419 (Vernon 1968), *with* Tex. Bus. & Com. Code Ann. § 3.420 (West 2002).

[39] *Peerless Ins. Co.*, 791 F.2d at 1179.

[40] *Id.* at 1180.

[41] *Id.*

No. 13-20293

Even though Coastal admits this proposition, it asks us to reach beyond and decide another question: namely, whether the money had and received claim allows for the recovery of attorney's fees. Chase Bank argues that this question is outside the scope of the appeal. We agree. This appeal is before us under 28 U.S.C. § 1292(b), which allows for an interlocutory appeal of an order in a civil action where the district judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[42] The district judge has to state in writing his opinion, and the court of appeals then has discretion to take the appeal.[43]

Here, after its initial order stating the controlling questions of law as to which there were substantial grounds for difference of opinion, the district court entered a clarification order explicitly identifying two questions. Not only that, but in granting leave to appeal from the initial order, we specified that leave was granted only as to those issues articulated in the May 1st clarification order and denied as to all other issues. Whether a money had and received claim supports attorney's fees is clearly not one of the two questions that we agreed to hear, and therefore, falls outside the scope of the appeal. We therefore decline to reach this issue.

IV

We turn next to whether the district court erred in determining that Texas requires that a settlement credit be applied such that the credit would reduce Chase Bank's liability rather than reducing the amount of Coastal's total loss.

---

[42] 28 U.S.C. § 1292(b).
[43] *Id.*

12

No. 13-20293

"Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered."[44] The one satisfaction rule applies in both those situations where several defendants commit the same act *and* where the defendants commit technically different acts that result in the same injury.[45] Where there is an indivisible injury caused by the settling and nonsettling defendant, "[t]here can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule."[46] "[T]he absence of tort liability does not preclude the application of the one satisfaction rule."[47] The nonsettling defendant may claim credit based on the damages for which all the tortfeasors are jointly liable.[48] But the nonsettling defendant "cannot receive credit for settlement amounts representing punitive damages."[49]

Both Coastal and Chase Bank agree that the one satisfaction rule applies in this case, and that Chase Bank is eligible for a settlement credit. The two disagree on how the settlement credit should be applied. Coastal argues that the settlement credit should be applied to the plaintiff's total loss ($2.5 million). Chase Bank argues that the settlement credit should be applied to reduce the nonsettling defendant's liability. Additionally, Coastal and Chase Bank interpret the nonsettling defendant's liability differently. Costal argues that the nonsettling defendant's liability is the amount for which the nonsettling defendant was originally sued ($1.345 million). Chase Bank argues that the nonsettling defendant's liability would be the money still in controversy after

---

[44] *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000).

[45] *Id.*

[46] *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991).

[47] *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 327 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

[48] *Crown Life Ins. Co.*, 22 S.W.3d at 391.

[49] *Id.*

the application of the § 3.405 defense ($118,434.75). Indeed, the district court's ruling makes clear that it would apply the settlement credit to the $118,434.75 figure.

We first turn to whether the one satisfaction rule should be applied here. As explained in *Stewart Title Guaranty Co. v. Sterling*,[50] the one satisfaction rule "developed at common law from the interpretation and application of the original contribution statute."[51] It was a damage adjustment mechanism that prevented a windfall to the plaintiff in the form of a double recovery.[52] But the prerequisite for the one satisfaction rule is that there has to be a single, indivisible injury.[53] Given this prerequisite, whether the one satisfaction rule obtains in a case in which several checks have been fraudulently indorsed and deposited is not self-evident. The injury can either be viewed as a single injury, for the whole amount lost, or as a collection of injuries, for each check that was deposited by Hollaway into his account. This inquiry is necessary because Coastal's objection to the application of the settlement credit hinges on the characterization of the injury. The settlement between Coastal and Hollaway represents a compromise as to all the money assertedly stolen by Hollaway ($2.5 million). Chase Bank's liability is for less than that amount: first, Chase Bank was only sued for a portion of the money stolen ($1.345 million), and second, after partial summary judgment, Chase Bank is only potentially liable for 82 checks ($118,434.75).

---

[50] 822 S.W.2d 1 (Tex. 1991).

[51] *Id.* at 5. The original contribution statute is still in effect. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 32.001 to 32.003. As discussed in *Sterling*, in the past, Texas has had a variety of contribution schemes, including comparative negligence, comparative responsibility, and common law contribution by comparative causation. 822 S.W.2d at 5. Currently, only the original contribution statute and the comparative responsibility statute are in force. *Id.* at 5. Since the other contribution schemes are not at issue in this appeal, we need not discuss them further.

[52] *Id.* at 6.

[53] *Id.* at 7.

No. 13-20293

The Texas Supreme Court has not considered whether several fraudulently indorsed and deposited checks constitute a single injury or multiple injuries. So, "we must determine, to the best of our ability, what it would decide under the same circumstances."[54] "In making an *Erie* guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise."[55]

In *AMX Enterprises, Inc. v. Bank One, N.A.*,[56] a Texas appellate court dealt with a similar situation. In that case, homeowners entered into a contract with AMX for mold remediation services on behalf of themselves and their mortgage company.[57] After AMX fully performed, the homeowners' insurance company issued three checks—each payable to the homeowners, the mortgage company, and AMX.[58] The checks were supposed to be delivered to AMX.[59] But after the homeowners indorsed the checks, the mortgage company indorsed the checks and deposited them into its own bank account, without AMX's indorsements.[60] AMX filed suit against the homeowners, the mortgage company, and the bank.[61] The homeowners settled with AMX for a little more than the whole amount owed, and the bank successfully moved for summary judgment.[62] On appeal, the Texas appellate court held that the one satisfaction rule applied, therefore precluding a second recovery from the bank.[63]

---

[54] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[55] *Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (internal quotation marks omitted).

[56] 196 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[57] *Id.* at 205.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at 207.

No. 13-20293

With this persuasive ruling, we find that the one satisfaction rule obtains in this case as well, for while there are multiple checks at issue, there is but a single injury. Under the one satisfaction rule, Chase Bank is entitled to a settlement credit. Next, we agree that the method of applying the settlement credit is well-established in Texas: the settlement credit must be applied against the nonsettling defendant's liability, not the plaintiff's total loss.[64]

This does not end our analysis. Coastal rightly argues that the settlement between Coastal and Hollaway represented a compromise for a different amount (the total loss) than the amount at issue (the nonsettling defendant's liability). The settlement was for both Hollaway's separate damages *and* the damages common to Hollaway and Chase Bank. More specifically, the settlement was for the entire sum of money assertedly stolen by Hollaway. Here, only the 82 checks remaining before the district court are at issue. The settlement credit cannot be applied wholesale to the nonsettling defendant's liability, but rather an allocation is necessary.

The Texas Supreme Court has clarified the procedure used where the settlement represents separate and common damages. In *Crown Life Insurance Company v. Casteel*,[65] policyholders sued Crown Life Insurance Company ("Crown Life") and its independent sales agent, Casteel.[66] Casteel cross-claimed against Crown Life.[67] With regard to the policyholders' claims, the jury found that both defendants were liable; that Crown Life had committed the wrongful acts knowingly and bore responsibility for 99% of the

---

[64] *See Casteel*, 22 S.W.3d 378 at 392; *Sterling*, 822 S.W.2d at 7–8; *see also Nowak v. Pellis*, 248 S.W.3d 736, 741 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 310–11 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Vanasek v. Underkofler*, 50 S.W.3d 1, 10 (Tex. App.—Dallas 1999, pet. granted), *aff'd in part and rev'd in part on other grounds*, 53 S.W.3d 343 (Tex. 2001).

[65] 22 S.W.3d 378 (Tex. 2000).

[66] *Id.* at 381–82.

[67] *Id.* at 382.

policyholders' damages; and that Casteel had not acted knowingly and bore responsibility for only 1%.[68] With regard to Casteel's claims against Crown Life, the jury found Crown Life responsible and awarded various damages.[69] Following trial, Crown Life settled with the policyholders—as part of the settlement agreement, Crown Life was assigned the policyholders' rights against Casteel.[70] The trial court rendered a judgment notwithstanding the verdict as to Casteel's claims against Crown Life; dismissed the policyholders' claims against Crown Life because of the settlement; and rendered judgment on the verdict with respect to the policyholders' claims against Casteel.[71]

Before the Texas Supreme Court, Crown Life contended that Casteel was ineligible for a settlement credit under the one satisfaction rule.[72] Rather, Crown Life argued that when it settled, the jury had already found that Crown Life had acted knowingly, meaning that had the judgment been rendered, the policyholders would have been able to recover additional damages as well as joint and several damages from Crown Life.[73] By contrast, the jury had found that Casteel had not acted knowingly, meaning that he was responsible for only the joint and several damages.[74] Thus, Crown Life wanted the settlement credit to be applied against the total judgment that would have been rendered—the additional *and* joint and several damages—rather than the judgment rendered against Casteel.[75] The Texas Supreme Court disagreed. "[T]he court should not apply the settlement credit to the judgment that would have been rendered against the settling defendant in determining the credit

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.* at 390.

[73] *Id.* at 391.

[74] *Id.*

[75] *Id.*

amount. Instead, the court should look to the judgment to be rendered against the nonsettling defendant and apply established principles governing settlement credits."[76]

The court clarified that a nonsettling defendant can only receive a settlement credit based on the damages for which all tortfeasors are jointly liable, and cannot receive settlement credit for amounts representing punitive damages.[77] "[T]he nonsettling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant, but not for any amount of separate or punitive damages paid by the settling defendant."[78] The court concluded that Casteel was entitled to a settlement credit as to any settlement amount representing joint damages.[79] But once Casteel had offered proof of the settlement amount, Crown Life bore the burden to offer evidence allocating the settlement between joint damages and additional damages.[80] In other words, once the nonsettling defendant offers proof of the settlement amount, he is entitled to the settlement credit. Then, the plaintiff must bear the burden to demonstrate allocation of the settlement amount, so that part of that amount represents damages for which the settling and nonsettling defendant are jointly responsible and part of that amount represents damages for which the nonsettling defendant gets no credit.

*Casteel*'s lesson is squarely applicable here. Coastal is correct that the settlement amount between it and Hollaway represents the total loss amount. Chase Bank, on the other hand, is being sued for and is liable for a smaller loss

---

[76] *Id.*

[77] *Id.*

[78] *Id.* at 391–92.

[79] *Id.* at 392.

[80] *Id.*

amount than the total loss.[81] But Chase Bank is entitled to have the settlement credit applied to its potential liability. And it is Coastal's burden to demonstrate some sort of allocation in order to reduce that settlement credit. We also note that the settlement between Coastal and Hollaway not only represented a higher loss amount, but also different damages. Coastal sued Hollaway for punitive damages, but not Chase Bank. Therefore, Coastal might also be able to demonstrate that the settlement amount ought to be properly allocated otherwise.

As a result, the district court was correct in holding that the settlement credit should be applied to reduce the nonsettling defendant's liability, not the plaintiff's total loss. On remand, however, the district court must give Coastal an opportunity to demonstrate that allocation of the settlement amount is appropriate.[82]

V

We AFFIRM and REMAND for proceedings consistent with this opinion.

---

[81] That smaller loss amount is only for the 82 checks still in controversy. We note that there are 882 checks for which Chase Bank has already been granted summary judgment. We express no opinion as to the summary judgment on those 882 checks. However, even if all 964 checks were still in controversy, Coastal should be given an opportunity to demonstrate some sort of allocation to reduce the settlement credit.

[82] The dissent argues that we should not reach the settlement credit issue because Chase Bank has not yet been found liable on any amount. According to the dissent, upon remand, the district court will first determine liability as to the 82 checks. If the district court finds no liability, then there will be no need to discuss the settlement credit.

We note, however, that in Texas the one satisfaction rule can be "a ground for summary judgment in cases in which (1) the one satisfaction rule applies, (2) the settlement credit entirely sets-off the maximum amount of liability claimed by the plaintiff, and (3) punitive damages are not at issue." *Nowak*, 248 S.W.3d at 741. Thus, on remand, the district court might not determine liability as to the 82 checks, but might reward summary judgment based on the one satisfaction rule. For this reason, we think it proper for us to address this issue now.

No. 13-20293

HAYNES, Circuit Judge, concurring and dissenting:

I concur fully in Sections I-III and the judgment consonant therewith. I respectfully dissent from the decision to reach the settlement credit issue in Section IV and the judgment entered with respect to that issue. I conclude, after full consideration of the issues, that leave to hear an interlocutory appeal on that question was improvidently granted such that the portion of the prior order allowing leave to appeal that question should be vacated.

I begin by addressing the procedural issue of whether we can vacate the order of the prior panel in this case, and I conclude that we can. *United States v. Bear Marine Svcs.,* 696 F.2d 1117, 1120 (5th Cir. 1983). In our circuit, a motion for leave to file an interlocutory appeal is initially addressed to a motions panel. *Id.* That procedure was followed here, and the motions panel granted the appeal on the two discrete issues. Our precedent is clear, however, that the subsequent merits panel (our panel) is not bound by that order: "The merits panel has the benefit of full briefs and . . . oral argument [and] may conclude that the initial decision to hear the appeal was . . . improvident." *Id.* If the merits panel so concludes, "it must vacate the earlier order granting leave to appeal and . . . remand the case to the district court." *Id.* Thus, we have the power to decide that the prior grant of an interlocutory appeal was improvident.

Turning to the question of the settlement credit, it is understandable that, on its face, a court could conclude that resolution of the settlement credit issue could resolve the case because applying a multimillion dollar credit to a potential liability of less than $200,000 would seem to end the matter.[1] But as

---

[1] Notably, Coastal contends that the orders granting summary judgment on the 882 checks are in error. That question is not before us, but the pendency of additional questions

20

the majority opinion shows, it is not always that easy.  On its face, then, we are dealing with a decision about (and the majority opinion now remands for allocation of) settlement credits when the non-settling defendant has yet to be found liable for any amount at all.  Both sides agree that, even after the summary judgment regarding 882 checks, Coastal's claims regarding the 82 checks described in the majority opinion remain to be resolved.  If Coastal fails to prevail on those claims, there will be no need to grant a settlement credit of any kind.  Thus, the decision about settlement credits is premature and advisory.  *See id.* at 1121.[2]

The history of settlement credits and apportioning liability among defendants has a long and sometimes tortured history in Texas jurisprudence.  While the majority opinion admirably wades through the thicket, I submit we should be leery of doing so unnecessarily.  *Cf. Castellanos-Contreras v. Decatur Hotels*, 622 F.3d 393, 399 (5th Cir. 2010)(en banc)("Interlocutory review . . . is not mandatory [but] discretionary.").  I would vacate the portion of the order granting the interlocutory appeal that allowed the question of the settlement credits to proceed before our court.[3]  From the majority opinion's failure to do so, I respectfully dissent.

---

about Chase Bank's ultimate liability further undermines our ability to be of much assistance at this point.

[2]  The majority opinion posits that the "one satisfaction rule" may be a grounds for summary judgment, listing three factors, one of which is that "punitive damages are not at issue." Maj. Op. at n. 82. Although Chase Bank is not alleged to owe punitive damages, the majority opinion itself notes that Hollaway settled punitive damages claims for which a settlement credit would not be available, thus complicating any simple application of the "one satisfaction rule."  Thus, I think the better approach is to await the results of the liability case before determining the question of settlement credits.

[3] While I agree we have the power to limit our consideration of the appeal to particular questions, the proper procedure, in my view, is to avoid piecemeal analysis by considering the entire certified order as per *Castellanos-Contreras*, 622 F.3d at 398 ("[I]t is the order, not the question, that is appealable.").